[Civ. No. 18554. Fourth Dist., Div. One. Jan. 14, 1980.]

SAM STANSON, Plaintiff and Appellant, v.
SAN DIEGO COAST REGIONAL COMMISSION,
Defendant and Respondent.

COUNSEL

Norman B. Blumenthal for Plaintiff and Appellant.

George Deukmejian, Attorney General, R. H. Connett and N. Gregory Taylor, Assistant Attorneys General, Dennis W. Dawson and Anthony M. Summers, Deputy Attorneys General, for Defendant and Respondent.

OPINION

STANIFORTH, J.—Sam Stanson appeals from a judgment of the superior court denying his petition for writ of mandamus (Code Civ. Proc., § 1094.5) seeking to compel the San Diego Coast Regional Commission (Regional Commission) to issue a coastal development permit approving of the remodeling of Stanson's commercial building to include a second floor restaurant.

FACTS

Stanson was the owner of a two-story commercial building located within the coastal zone protected by the Regional Commission by virtue of California's Coastal Act of 1976 (Act) (Pub. Resources Code, § 30000 et seq.).[1] Stanson proposed to remodel the ground floor—previously used as a supermarket—into 16 small retail shops with a public walkway to the nearby beach area. He further proposed to remodel the second floor into a restaurant with seating capacity of no more than 50 persons. This portion of the building had not previously been used as a restaurant but as a storage area. Stanson has never obtained a developmental permit from the Regional Commission nor has he ever applied to the Regional Commission for an exemption from the permit requirements of the Act. (§ 30608.)

---

[1]All reference is to Public Resources Code unless otherwise specified.

Before submitting his plans for remodeling to the City of San Diego Building Department, he inquired of an agent of the Regional Commission about the need for a development permit. While the evidence is in dispute as to the nature of the discussions between Stanson and the agent of the Regional Commission, at the appeal hearing before the California Coastal Commission a staff member (Kreinberg) explained: "The Regional Commission originally informed the applicant [Stanson] that no permit would be needed for the conversion of the second floor from storage space to a restaurant. It then came to light—in the Regional Commission staff's opinion they understood more what was going to take place...was development under the Act and that a permit was needed."

, After his discussions with the agent for the Regional Commission, Stanson submitted his building plans for the remodeling to the appropriate City of San Diego agency and obtained the necessary approval and building permits. Upon issuance of the building permits, Stanson commenced the remodeling operation. The reconstruction was 100 percent complete downstairs and 90 percent complete in the upstairs area when on October 27, 1977, Stanson received a letter from the Regional Commission stating: "We had previously indicated to you that a coastal permit would not be necessary for remodeling of this building for continued general commercial uses. However, a remodeling for or construction of an addition for restaurant use would require a coastal development permit because of the increased intensity of use.

"Please contact...our office within 10 days following receipt of this letter regarding the filing of a permit application. An application form is enclosed for your convenience."

Stanson's agent (Wier) immediately contacted a Regional Commission staff member regarding this correspondence. Wier states he was never told to stop working. The renovation project continued and was "100 percent finished" and building inspections obtained and the restaurant and other businesses have since opened. Some months later and after completion of the project, at the suggestion and insistence of a regional commissioner that Stanson needed a permit, Stanson applied (Mar. 31, 1978) for a permit to *affirm* his remodeling of that portion of the building to become a restaurant.

At the hearing before the Regional Commission, the staff recommended against the issuance of a permit for these reasons: (1) no

on-site parking was provided, and (2) the approval would set a precedent that would be undesirable. In this hearing, Stanson's factual position was "no permit would be necessary." He stated he acted in good faith in seeking a coastal commission permit; he contacted the coastal commission before any remodeling on the project, before he sought any building permits from the City of San Diego; he was informed he did not need a permit. Relying on these assurances, he obtained the necessary permits from the city, commenced construction and expended substantial monies in the reconstruction. Only when nearing completion of the project, was he told of the "misunderstanding."

At the final hearing on Stanson's application, eight of the eleven regional commissioners were present. Of the eight present, five voted in favor of granting the permit to Stanson, and three voted against. Based upon the Regional Commission's interpretation of section 30315[2] to require a majority of the *authorized membership* of the Regional Commission, to wit, six of the eleven members for permit approval, the permit request was denied. While denying Stanson's request for permit, the Regional Commission by a seven-to-zero vote found that a violation of the Act had occurred but voted to take no legal action in connection with the violation.

Stanson appealed the denial of his application for a permit to the California Coastal Commission. He complained there of the error arising out of the Regional Commission's interpretation of section 30315, contending a denial of due process occurred where absent votes were to be regarded as no votes. He set forth again the reasons why he should not be required to have a permit and why he did not first seek and obtain a permit for proceeding with his reconstruction project. The state body affirmed the Regional Commission's decision denying Stanson's permit. No appeal was taken from the seven-to-zero vote to take no legal action in connection with Stanson's "violation of the Act."

Stanson then sought a writ of mandamus in the superior court. The superior court found the voting requirements of section 30315 constitu-

---

[2]Public Resources Code section 30315 provides: "The commission and regional commission shall meet at least once a month at a place convenient to the public. All meetings of the commission and each regional commission shall be open to the public. [¶] Unless otherwise specifically provided for in this division, a majority of the total appointed membership of the commission or of the regional commission, as the case may be, shall constitute a quorum and shall be necessary to approve any action required or permitted under this division."

tional, applied the "substantial evidence test" as the measure of its scope of review, discerned such quantum of evidence necessary to support the Regional Commission's denial of the permit and no factual basis to estop the Regional Commission's insistence upon a permit, and concluded Stanson was not entitled to the writ of mandate.

## CONTENTIONS

Stanson contends (1) section 30315 is unconstitutional on its face or, as applied to him, denied him due process, (2) the Regional Commission abused its discretion in concluding that Stanson's project constituted a "development" as defined in section 30106 and erred as a matter of law when it took into account the cumulative effect of future restaurant developments in reaching its decision to deny Stanson's permit application, (3) the superior court erred in using the substantial evidence test and in failing to exercise in its independent judgment in reviewing the Regional Commission's action, and (4) the trial court erred in finding the Regional Commission's refusal to grant his permit was supported by substantial evidence.

## DISCUSSION

### I

■ Stanson contends section 30315 is unconstitutional. Stanson complained of this matter in the administrative process on the first occasion when the opportunity presented itself, to wit, after the Regional Commission had denied his petition for permit on the basis of a five-to-three vote. Furthermore, his attack is on the facial validity of a statute defining administrative procedures. Such an attack should not be barred by a doctrine requiring the exhaustion of administrative remedies. (*State of California* v. *Superior Court*, 12 Cal.3d 237, 251 [115 Cal.Rptr. 497, 524 P.2d 1281].)

■ Stanson argues section 30315 deprives an applicant for a coastal development permit of a reasonable opportunity to be heard as guaranteed by the due process clause of the Fifth and Fourteenth Amendments. Section 30315 provides in part: "Unless otherwise specifically provided for in this division, a majority of the total appointed membership of the commission or of the regional commission, as the case may be, shall constitute a quorum and *shall* be necessary to ap-

*prove any action* required or permitted under this division."[3] (Italics added.) Stanson asserts the statutory requirement of an affirmative vote of a majority of the *total appointed membership* for the approval of any permit *rather than the majority* of the quorum present at a given hearing in effect permits a negative vote to be cast by absent commissioners who have not heard the merits of an application. Stanson's syllogism concludes an applicant is denied a meaningful opportunity to be heard because the statute does not offer him an opportunity to persuade the absent commissioner whose vote is nonetheless to be counted as nay.

Stanson is correct in that a fundamental requirement of due process is the opportunity to be heard (*Armstrong* v. *Manzo*, 380 U.S. 545, 552 [14 L.Ed.2d 62, 66, 85 S.Ct. 1187]) and the principles of due process are fully applicable to administrative proceedings which are quasi-judicial in nature. (*Hannah* v. *Larche*, 363 U.S. 420, 442 [4 L.Ed.2d 1307, 1321, 80 S.Ct. 1502]; see *CEEED* v. *California Coastal Zone Conservation Com.*, 43 Cal.App.3d 306 [118 Cal.Rptr. 315].) Yet no particular form of proceeding is required so long as the statute provides for a "reasonable" opportunity to be heard. (*Anderson Nat. Bank* v. *Luckett*, 321 U.S. 233, 246 [88 L.Ed. 692, 704, 64 S.Ct. 599, 151 A.L.R. 824]; *Drummey* v. *State Bd. of Funeral Directors*, 13 Cal.2d 75, 80 [87 P.2d 848]; *CEEED* v. *California Coastal Zone Conservation Com.*, *supra*, at p. 329.)

What is a "reasonable" opportunity to be heard will "not turn solely on the fact that a constitutionally protected interest is affected by governmental action...the nature of the claimed procedural rights, the extent of interference with the private interest, and the governmental interest" all coalesce to define the scope of due process. (*CEEED* v. *California Coastal Zone Conservation Com.*, *supra*, at p. 317, citing *Hannah* v. *Larche*, *supra*, 363 U.S. 420, 442 [4 L.Ed.2d 1307, 1321]; *Goldberg* v. *Kelly*, 397 U.S. 254, 263 [25 L.Ed.2d 287, 296, 90 S.Ct. 1011]; *City of Escondido* v. *Desert Outdoor Advertising, Inc.*, 8 Cal.3d 785, 791 [106 Cal.Rptr. 172, 505 P.2d 1012].)

The voting requirement of section 30315 burdens Stanson's ability to secure a permit to develop his property. This fact alone, however, does

---

[3]Pursuant to Public Resources Code section 30333 (rule-making power), the California Coastal Commission adopted California Administrative Code, title 14, section 13022 construing section 30315 to require a vote of the majority of the total commission for any action.

not make out a denial of due process. In *CEEED, supra,* the court upheld a provision of the 1972 Coastal Act even though it placed on the applicant an affirmative duty to persuade the commission the development will not result in coastal degradation. (*CEEED v. California Coastal Zone Conservation Com., supra,* at pp. 329-330.) To secure a development permit, applicant must admittedly overcome the built-in bias of the members of the commission arising from the declared policy of the Act. (See § 30001.) The Supreme Court, in construing section 27001 (predecessor to § 30001.5), stated: "[T]he coastal zone is a valuable resource belonging to all the people, that its permanent protection is a paramount concern to the citizens of the state...." (*State of California v. Superior Court, supra,* 12 Cal.3d 237, 253.)

Moreover, the burden on the individual landowner's development rights must be weighed in the balance against the substantiality of the interest to be effected by the state's police power. (Cf., *Avco Community Developers, Inc. v. South Coast Regional Com.,* 17 Cal.3d 785 [132 Cal.Rptr. 386, 553 P.2d 546].)

Here Stanson can at best make the assertion it is more difficult to secure a development permit from the majority of the total appointed commission when only a quorum of the total commission appear for a hearing; in such circumstances, a permit applicant, to succeed, must win a unanimous vote; this arguably is a more onerous burden than persuading a mere majority if the total commission appears. However, this voting procedure does not prevent the applicant from securing a permit, rather it insures the issuance of a permit will be based on the judgment of a broader cross section of the commission. (Cf., *Grimm v. City of San Diego,* 94 Cal.App.3d 33, 40 [156 Cal.Rptr. 240].) In the final analysis, the state has a substantial interest in protecting the integrity of the decision-making process and fostering the broad policy of coastal preservation. The voting requirements are reasonably related to these valid objectives.

The foregoing general principles foreshadow a denial of Stanson's claim of unconstitutionality of section 30315. They are further buttressed by the reasoning and holding in *Patterson v. Central Coast Regional Com.,* 58 Cal.App.3d 833 [130 Cal.Rptr. 169], where the validity of a *two-thirds vote* requirement needed for approval of developments in particularly sensitive areas was upheld against procedural due process attack. (*Id.,* at p. 847.) Implicit in the *Patterson* holding is a rejection of Stanson's due process contention.

Finally, Stanson improvidently relies upon the United States Supreme Court decision in *F.T.C.* v. *Flotill Products,* 389 U.S. 179, 183 [19 L.Ed.2d 398, 402, 88 S.Ct. 401]. The Supreme Court there stated: "[I]n the *absence of a contrary statutory provision* [the common law rule that] a majority of a quorum constituted of a simple majority of a collective body is empowered to act for the body." (*Ibid*; italics added.) Section 30315 is such a "contrary statutory provision."

Based upon the foregoing reasons and authorities, we conclude section 30315 is constitutional, meets due process requirements.

## II

■ Stanson next asserts the Regional Commission lacked jurisdiction because the project did not constitute a "development" within the applicable sections of the Act. Section 30106 requires the obtaining of a coastal development permit before undertaking a "development" as defined by section 30106. A "development" is defined in part as any "change in the density or intensity of use of land." (§ 30106.) Stanson would construe this language narrowly to embrace only increases in square footage of use.

The Regional Commission on the other hand interprets the term "development" to include increases in intensity of use resulting from increased automobile and pedestrian traffic. Such a broad interpretation is consistent with the legislative policy of the Act found in section 30001.5 and the broad grant of power to the agency to adopt any regulation or take any action it deems reasonable and necessary to carry out its provisions. (§ 30333.) Stanson's narrow construction places undue emphasis on sheer quantitative measures irrespective of the qualitative changes in use. Such a formalistic approach would defeat the clear legislative directive "that priceless coastal resources are not irreversably committed to uses which would be inconsistent with the plan." (*State of California* v. *Superior Court, supra,* 12 Cal.3d 237, 253.) Nor would such interpretation be in keeping with the wisdom of the Supreme Court's interpretation of the Environmental Quality Act. (§ 21000 et seq.; *Friends of Mammoth* v. *Board of Supervisors,* 8 Cal.3d 247 [104 Cal.Rptr. 761, 502 P.2d 1049].) Thus, the Regional Commission properly looked beyond the mere reduction in floor space to the actual effect of intensified use which might be generated by Stanson's project. (4) Stanson contends the Regional Commission improperly considered

the cumulative environmental impact of future restaurants which might be built. His reliance on *Natural Resources Defense Counsel, Inc.* v. *California Coastal Zone Conservation Com.*, 57 Cal.App.3d 76 [129 Cal.Rptr. 57], is misplaced. Although, in this case, the court did not require the commission to consider cumulative impact, it does not follow it is prohibited. There is precedent that the policy of the Act requires the agency to consider cumulative impacts before granting approval of a project. (*Coastal Southwest Dev. Corp.* v. *California Coastal Zone Conservation Com.*, 55 Cal.App.3d 525, 537 [127 Cal.Rptr. 775]; cf., *Whitman* v. *Board of Supervisors,* 88 Cal.App.3d 397, 406-410 [151 Cal.Rptr. 866].) Stanson's construction of the Act would reduce the Regional Commission's planning function to a shambles resulting in a piecemeal approach which would guarantee the destruction of coastal resources.

## III

Stanson next contends the trial court erred in applying the "substantial evidence" test in reviewing the decision of the Regional Commission. He asserts the "fundamental vested right" (*Strumsky* v. *San Diego County Employees Retirement Assn.,* 11 Cal.3d 28, 44 [112 Cal.Rptr. 805, 520 P.2d 29]) rule was applicable; the judge should have exercised his "independent judgment" on the evidence presented.

The Regional Commission responds, contending Stanson cannot raise the issue of a "vested right" for the first time in the trial court. (*State of California* v. *Superior Court, supra,* 12 Cal.3d 237, 248-250, 252.) "Where the developer fails to seek such a determination but instead elects to apply only for a permit, he cannot later assert the existence of a vested right to development, i.e., the developer waives his right to claim that a vested right exists." (*Davis* v. *California Coastal Zone Conservation Com.*, 57 Cal.App.3d 700, 708 [129 Cal.Rptr. 417].) The superior court found that Stanson had not filed an application with the Regional Commission for a vested rights exemption.

The Regional Commission as well as the superior court misread Stanson's position. He does not now nor did he before the Regional Commission or the trial court seek an exemption from permit requirement under section 27404 (now § 30608) on the claim of a vested right. What Stanson did assert before the Regional Commission, the California Coastal Commission, the superior court and before this court was

that the Regional Commission was estopped to insist upon its permit requirement.

Stanson claims a *vested* right fundamental in nature because he obtained building permits, expended substantial sums of money to remodel his building, entered into leases with rentals hinging upon the restaurant opening, in reliance upon the Regional Commission agent's representation that a coastal development permit was not necessary. The basis for such a fundamental vested right is rooted in the United States and California constitutional protection against deprivation of property rights without due process of law. It is not a "vested right" based upon section 30608. Stanson's claim of right, rather, is a "refinement of the vested rights principle" found in section 30608. (*Patterson v. Central Coast Regional Com.*, *supra*, 58 Cal.App.3d 833, 842-845.)

The acquisition of such right is grounded on equitable principles of estoppel. (See *Spindler Realty Corp.* v. *Monning*, 243 Cal.App.2d 255, 269 [53 Cal.Rptr. 7]; *Anderson* v. *City Council*, 229 Cal.App.2d 79, 89 [40 Cal.Rptr. 41].) Estoppel generally requires "'(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.'" (*City of Long Beach* v. *Mansell*, 3 Cal.3d 462, 489 [91 Cal.Rptr. 23, 476 P.2d 423].) In other words, an owner of property acquires a vested right to construct a building where the conduct of the government amounts to a representation that such construction is fully approved and legal, and in reliance on such representation the owner materially changes position. (*Russian Hill Improvement Assn.* v. *Board of Permit Appeals*, 66 Cal.2d 34, 39 [56 Cal.Rptr. 672, 423 P.2d 824].)

Once such a right has vested in this sense, its impairment or destruction must not transgress constitutional principles. (*Aries Dev. Co.* v. *California Coastal Zone Conservation Com.*, 48 Cal.App.3d 534, 548 [122 Cal.Rptr. 315].) Where this property right, a constitutionally rooted right, is in issue before the Regional Commission, the "independent judgment" review standard is mandated in the superior court.

In *Transcentury Properties, Inc.* v. *State of California*, 41 Cal. App.3d 835, 844 [116 Cal.Rptr. 487], the court reasoned: "Since the

state commission is not an agency of constitutional origin which has been granted limited judicial power by the Constitution, the trial court is authorized to make an independent judgment on the evidence only if the commission's decision 'affects a right which has been legitimately acquired or is otherwise "vested," and...is of a fundamental nature from the standpoint of its economic aspect or its "effect...in human terms and the importance...to the individual in the life situation,"...' [Citation.]" and concluded: "Here, respondents' asserted right is fundamental; it derives from the constitutional guarantee that property may not be taken without due process of law. [Citations.] The central question presented in this case is the extent of respondents' vested right. Consequently, the trial court must make its own independent judgment on the evidence." (See also *Kilpatrick's Bakeries, Inc.* v. *Unemployment Ins. Appeals Bd.*, 77 Cal.App.3d 539, 547-548 [143 Cal.Rptr. 664] and cases cited.)

The trial court erred in applying the substantial evidence test in reviewing the Regional Commission's denial of Stanson's permit application.

## IV

This last holding, favorable to Stanson, is dispositive, makes unnecessary any lengthy analysis of his contention that the trial court erred in discerning substantial evidence to support the Regional Commission's denial of the permit request. We need point only to the record to demonstrate Stanson was not confronted with a factual basis—"raw evidence"—to support the (staff's) Regional Commission finding that the restaurant's presence would cause a traffic overburdening of the adjacent coastal areas and cite *Topanga Assn. for a Scenic Community* v. *County of Los Angeles,* 11 Cal.3d 506, 515 [113 Cal.Rptr. 836, 522 P.2d 12], for the legal effect of such omission.

Long before Stanson was denied the permit by the Regional Commission, his remodeling was 100 percent complete; the shops and restaurant were open for business. Further, the Regional Commission's decision to "take no legal action in connection with the violation" is now final. Thus, there are not even monetary penalties here in issue. (See *South Coast Regional Com.* v. *Gordon,* 18 Cal.3d 832, 838, fn. 5 [135 Cal.Rptr. 781, 558 P.2d 867].) These hard facts, together with the Supreme Court reasoning in *Gordon, supra,* suggest our dismissal of this

appeal as moot after disposition of the novel questions of general interest presented by the appeal. (*Heimberger* v. *City of Fairfield,* 44 Cal.App.3d 711, 713 [117 Cal.Rptr. 482].) Whether, in light of this opinion, Stanson will wish to continue his efforts to compel the issuance of the permit for some reason(s) not appearing in this record, we do not know.

The judgment is reversed and cause remanded for further proceedings consistent with the views expressed in this opinion.

Brown (Gerald), P. J., and Cologne, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied March 13, 1980.