Filed 2/14/14 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| TEJON REAL ESTATE, LLC,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CITY OF LOS ANGELES,<br><br>    Defendant and Respondent. | B247255<br>(Los Angeles County<br>Super. Ct. No. BC485719)<br><br>ORDER MODIFYING<br>OPINION AND DENYING<br>REHEARING<br>[NO CHANGE IN JUDGMENT] |

THE COURT:*

It is ordered that the opinion filed January 22, 2014 be modified as follows:

> page 4, lines 3 to 10, delete the first three sentences of the first full paragraph, starting with the sentence that begins "Appellant quoted" and ending with the sentence "(Quoting DWP Rules, rule 15.A.6.c.)" and insert in its place the following:
>
> > Appellant quoted a DWP rule applicable to a water main extension "on an unimproved street[], not in a new subdivision," which was "not at . . . grade" level. The provision permitted DWP to charge the applicant "up to the full cost of any extension" under certain circumstances, including "'[w]here[] in the opinion of the Chief Engineer of Water Works, the estimated revenue from the service to be provided does not justify the additional cost necessary for local distribution facilities.'" (Quoting DWP

Rules, rule 15.A.6.c.) Appellant asserted that because the Harriman Avenue lot *was* at grade level this provision was inapplicable. Nevertheless, he relied on the language of the provision to assert that DWP could charge an applicant the cost of an extension only where all the conditions of the provision were met, including issuance of an opinion by the Chief Engineer of Water Works that "the estimated income from water use [did] not justify the cost that would be incurred by [DWP] for providing a water line." (Emphasis omitted.)

page 9 to 10, delete the text of footnote 3 and replace it with the following:

In this regard, we note that appellant claimed the necessity of the fire hydrant and the appropriate water supply could not be resolved without a "'determin[ation] by the [Fire] Chief'" whether alternate arrangements might satisfy the Fire Code. Appellant has not and cannot allege that it receive such a determination from the Fire Chief.

The petition for rehearing is denied. This modification does not change the judgment.

_____

*EPSTEIN, P. J.          MANELLA, J.          WILLHITE, J.

2

Filed 1/22/14 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| TEJON REAL ESTATE, LLC, | B247255 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC485719) |
| v. | |
| CITY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles, Frederick C. Shaller, Judge.  Affirmed.

David M. Leeper for Plaintiff and Appellant.

Michael N. Feuer, City Attorney and Brian I. Cheng, Deputy City Attorney for Defendant and Respondent.

Appellant Tejon Real Estate, LLC, the owner of a vacant lot in Los Angeles, contends the trial court erred in sustaining the demurrer of respondent City of Los Angeles (City) to appellant's complaint and dismissing the underlying action. Appellant had engaged in discussions with City representatives concerning the conditions under which it could obtain an extension of water service to its lot, and whether installation of a fire hydrant would be required prior to building a residence. Having obtained informal opinions from City and Fire Department representatives concerning the cost of the water extension and the necessity of the hydrant, appellant initiated an action for declaratory relief, seeking interpretation of the Department of Water and Power Rules Governing Water and Electric Service (DWP Rules) and the Fire Code. We conclude an action for declaratory relief is not appropriate to review an administrative decision; moreover, the action was unripe, as appellant had failed to exhaust administrative remedies or obtain a final administrative determination. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant's original complaint alleged that it owned a vacant lot described as unimproved and zoned for a single family residence. The lot is located on an unpaved portion of Harriman Avenue, approximately 430 feet from the closest water main and fire hydrant. Appellant alleged that it desired to build a residence on the lot and had been informed by a Fire Department "representative" that a building permit would not be approved unless there was a fire hydrant within 300 feet of the proposed structure. In addition, appellant allegedly received a written estimate from the DWP stating that the cost of extending the water main to the lot

2

would be $77,000.[1]  Appellant alleged that the requirements outlined by the representatives were not authorized by law, and that it was DWP's obligation to provide water service at its own expense, "rather than make it impractical for an owner of a lot to build on the lawfully subdivided lot, because of the expense of obtaining water and fire protection . . . ."  Appellant sought a court interpretation of DWP's Rules, in particular Rule 15, governing "[e]xtensions of the Department's Water Distribution System which are necessary to make water service of a permanent character available to Applicants . . . ."

The City demurred contending that the case was not ripe, and that appellant had failed to exhaust the administrative process as it had not submitted plans, applied for a permit or obtained an official decision from the City.  Moreover, to the extent appellant contended it had received a final administrative decision, administrative mandamus rather than declaratory relief was the appropriate remedy.  The demurrer was sustained with leave to amend, and appellant filed a first amended complaint (FAC).

In the FAC, appellant alleged that its inquiries to City and Fire Department personnel represented a "complete application for water service to the subject lot" and that the letter it received in response to its inquiry represented "the official action and final determination on [its] application[] by [DWP]."  Appellant conceded it had not applied for a building permit, but contended the cost of providing water service to the lot was not dependent on the use of the property.  Appellant further contended that applying for a building permit would be a "waste" of funds because the lot was "in an area where homes do not sell for enough

---

[1]  According to the complaint, this was the estimated expense of installing a 430-foot long, six-inch extension, which would supply 1,200 gallons of water per minute, or 20 gallons per second, the pressure allegedly needed to fight a fire.

3

money to make it practical to start spending an unknown amount of money to seek permits as long as the cost of water remains at $77,000."

Appellant quoted a DWP rule applicable to a water main extension "on [an] unimproved street[], not in [a] new subdivision," which was "not at . . . grade" level. Although it denied Harriman Avenue was not at grade level, appellant sought to rely on this provision, contending it prohibited charging the owner for the extension "'[w]here[] in the opinion of the Chief Engineer of Water Works, the estimated revenue from the service to be provided does not justify the additional cost necessary for local distribution facilities.'" (Quoting DWP Rules, rule 15.A.6.c.) In addition, appellant alleged that a fire hydrant and six-inch water supply was not required, because the applicable provisions of the Fire Code state that its requirements pertain "'unless otherwise determined by the Chief.'" (Quoting Fire Code, § 57.09.07; see also § 57.09.08 ["Supplemental fire protection equipment or systems shall consist of . . . [f]ire hydrants which shall be installed in accordance with section 57.09.06 . . . , or as required by the Chief."].)[2] Appellant alleged that before it could be charged for the service extension, "there must first be a reasonable opinion by the DWP that, 'the estimated revenue from the service to be provided does not justify the additional cost necessary for local distribution facilities,'" that the Fire Chief had the "authority to be flexible as to the location and flow rate of fire hydrants," and that "the [Fire Code] does not require a hydrant within 300 feet of a building, or 20 gallons per second, with 20 psi remaining, as the [City's] staff is requiring, because the [C]hief has the authority to determine otherwise, which authority must be exercised reasonably."

---

[2]    The Fire Code provisions to which appellant refers are contained in Article Seven, Chapter V of the Los Angeles Municipal Code.

4

In the prayer for relief, the FAC requested a declaration determining whether "a service connection could be used, instead of a main extension, and still provide adequate water for a permit for a single family residence on the subject lot" and whether "a standard, single outlet fire hydrant, located directly in front of plaintiff's lot, fed by a 1-1/4 inch service connection, would be a project which should be approved by the Fire Chief, if the proposed house had a garage with two-hour fire rated walls and ceiling, and if all roofs were covered with class A fire rated covering, with stucco covering all exterior walls, and with automatic fire sprinklers inside all portions of the house and garage, with a box to hold a 44 yard hose, to bring water within[] 300 feet of the house, or what else would make a house on the subject lot a project which would be approved by the Fire Chief."

The City again demurred, asserting as it had before that the request for declaratory relief was not ripe, and that administrative remedies had not been exhausted as appellant had not prepared plans for an actual project or applied for permits. The City pointed out that "until complete plans (showing all features of the house) are submitted for review, [it] [could] not grant any exemption or impose any conditions." The City also continued to assert that declaratory relief was not an appropriate substitute for mandamus. Appellant contended that the facts alleged in the FAC established that application for a permit would have been futile. It stated it would amend to seek a writ of mandate if necessary.

The court sustained the demurrer without leave to amend, stating: "In spite of the ruling on the Demurrer to the complaint placing [appellant] on notice of this defect in the pleading, [appellant] has still not alleged facts to establish that this controversy is ripe for declaratory relief. [Appellant] admits it never applied for permits, nor is there an allegation of an actual proposal for construction. Nor are there any facts alleged to establish that applying for a permit would have been futile." The court found that "[a]dministrative decisions are reviewable by

5

administrative writ," and observed that appellant was "attempting to sidestep the administrative process by obtaining an advisory opinion on a hypothetical project . . . requir[ing] [the court] to apply the applicable Rules in the abstract." Appellant's action was dismissed. This appeal followed.

## DISCUSSION

The sole cause of action in appellant's complaint was for declaratory relief. Appellant contends (1) that it "completed the application process for water service" and received a "final determination," and (2) that it is, therefore, entitled to a declaration interpreting the pertinent rules and regulations under Code of Civil Procedure section 1060. Appellant is incorrect on both counts.

A. *Declaratory Relief Is Not an Appropriate Method to Challenge an Administrative Decision*

Section 1060 of the Code of Civil Procedure authorizes a party "who desires a declaration of his or her rights or duties with respect to another" to bring an original action "for a declaration of his or her rights and duties," and permits the court to issue "a binding declaration of these rights or duties." A declaratory relief action is an appropriate method for obtaining a declaration that a statute or regulation is facially unconstitutional, something appellant does not seek. (*Agins v. City of Tiburon* (1979) 24 Cal.3d 266, 272-273, overruled on other grounds in *First English Evangelical Lutheran Church of Glendale v. Los Angeles County* (1987) 482 U.S. 304.) Where, as here, the challenge is to a regulation's "*application* to the lands of the complaining part[y], . . . the proper and sole remedy [is] administrative mandamus." (*Id.* at p. 273; accord, *Taylor v. Swanson* (1982) 137 Cal.App.3d 416, 418 ["If a landowner desires to attack the overall constitutionality of a zoning ordinance which impedes a desired use of his

6

property, the remedy is an action for declaratory relief . . . ; . . . if the landowner . . . seeks only to obtain a ruling that the regulation as applied to his particular property is unconstitutional, that issue is properly raised before the agency and its adverse decision is reviewable by administrative mandate and not otherwise." (Fn. & italics omitted.)]; *State of California v. Superior Court* (1974) 12 Cal.3d 237, 248, 249 ["It is settled that an action for declaratory relief is not appropriate to review an administrative decision."]; *Tri-County Special Educ. Local Plan Area v. County of Tuolumne* (2004) 123 Cal.App.4th 563, 576, quoting *Walker v. Munro* (1960) 178 Cal.App.2d 67, 72 ["'The declaratory relief provisions do not independently empower the courts to stop or interfere with administrative proceedings by declaratory decree.'"]; see *Zetterberg v. State Dept. of Public Health* (1974) 43 Cal.App.3d 657, 663 ["A difference of opinion as to the interpretation of a statute as between a citizen and a governmental agency does not give rise to a justiciable controversy [for declaratory relief]."].) Courts have specifically held that "'the proper method to challenge the validity of conditions imposed on a building permit is administrative mandamus under Code of Civil Procedure section 1094.5.'" (*Rezai v. City of Tustin* (1994) 26 Cal.App.4th 443, 448-449, quoting *City of Santee v. Superior Court* (1991) 228 Cal.App.3d 713, 718.)

Because appellant's complaint and FAC improperly sought declaratory relief to review a purported administrative decision, demurrer was properly sustained on that ground alone. (See *State of Calif. v. Superior Court*, *supra*, 12 Cal.3d at pp. 248-249; *Selby Realty Company v. City of San Buenaventura* (1973) 10 Cal.3d 110, 126-127.)

7

B. *Appellant Failed to Exhaust Its Administrative Remedies as the Informal Information Provided by Representatives of DWP and the Fire Department Did Not Represent a Final Administrative Decision*

When a statute or lawful regulation establishes a quasi-judicial administrative tribunal to adjudicate remedies, "the aggrieved party is generally required to initially resort to that tribunal and to exhaust its appellate procedure." (*Jonathan Neil & Assoc., Inc. v. Jones* (2004) 33 Cal.4th 917, 930.) "'In the context of administrative proceedings, a controversy is not ripe for adjudication until the administrative process is completed and the agency makes a final decision that results in a direct and immediate impact on the parties.'" (*McAllister v. County of Monterey* (2007) 147 Cal.App.4th 253, 274-275, quoting *Santa Barbara County Flower & Nursery Growers Assn. v. County of Santa Barbara* (2004) 121 Cal.App.4th 864, 875.) "With limited exceptions, . . . where an adequate administrative remedy is provided . . . , resort to that forum is a 'jurisdictional' prerequisite to judicial consideration of the claim." (*Styne v. Stevens* (2001) 26 Cal.4th 42, 56.)

"The exhaustion doctrine is principally grounded on concerns favoring administrative autonomy (i.e., courts should not interfere with an agency determination until the agency has reached a final decision) and judicial efficiency (i.e., overworked courts should decline to intervene in an administrative dispute unless absolutely necessary)." (*Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 391.) Restricting courts to review of final agency decisions permits courts to "benefit[] from the expertise of an agency particularly familiar and experienced in the area." (*Styne v. Stevens*, *supra*, 26 Cal.4th at p. 58.) "'"Even where the administrative remedy may not resolve all issues or provide the precise relief requested by a plaintiff, the exhaustion doctrine is still viewed with favor "because it facilitates the development of a complete record that draws on

8

administrative expertise and promotes judicial efficiency."'"" (*Sierra Club v. San Joaquin Local Agency Formation Com.* (1999) 21 Cal.4th 489, 501.)

A demurrer may properly be sustained based on the failure to adequately plead exhaustion of administrative remedies. (*Shuer v. County of San Diego* (2004) 117 Cal.App.4th 476, 482.) In order to withstand a demurrer for failure to allege exhaustion of available administrative remedies, the plaintiff must allege facts showing that he did exhaust administrative remedies or facts showing that he was not required to do so. (*Ibid*; *Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 333.)

Here, it is clear from the allegations of the complaint that appellant failed to obtain a final administrative decision before filing the underlying action. Indeed, appellant admits that it did not prepare or submit plans or seek a building permit which would have provided an opportunity for all the relevant City departments to determine precisely what conditions to impose under the City's various building and safety provisions before appellant could commence construction of the proposed residence. Complaining of the expense, appellant contends it should not be required to undergo the plan preparation and permitting procedures required by every party who seeks to develop a property in a modern city. Courts are unsympathetic to the contention that a landowner should be allowed to litigate the validity of zoning or building regulations as applied to a specific property without having undergone the complete permitting process, particularly where, as here, the party contends entitlement to an exemption or variance.[3] "[T]he question of

---

[3]    In this regard, we note that the DWP rule on which appellant primarily seeks to rely requires the "'opinion of the Chief engineer of Water Works'" concerning whether the revenue from the water service to be provided justifies "the additional cost necessary for local distribution facilities." Similarly, appellant claimed the necessity of the fire hydrant and the appropriate water supply could not be resolved without a "'determin[ation] by the [Fire] Chief'" whether alternate arrangements might satisfy the
*(Fn. continued on next page.)*

9

entitlement to an exemption [from the standard rules and regulations] involves the marshalling of facts," and if courts allow developers to bypass administrative exemption proceedings and resort to the courts in the first instance, "it would not only frustrate one of the underlying purposes of the exhaustion doctrine, i.e., the need for judicial intervention might be obviated by the outcome of the administrative proceedings, but would also reward developers who made no attempt to fulfill the requirements of the act and the regulation, while penalizing those who made a good faith effort to comply." (*South Coast Regional Com. v. Gordon* (1977) 18 Cal.3d 832, 837-838; see, e.g., *State of California v. Superior Court*, *supra*, 12 Cal.3d at p. 249 [plaintiff alleging in lawsuit it had vested right to proceed with development of coastal property without obtaining permit was required first to seek vested right determination from commission with authority over coastal development]; *Metcalf v. County of Los Angeles* (1944) 24 Cal.2d 267, 269-270 [party challenging validity of zoning ordinance as applied to specific property must first apply to local regional planning commission to have property exempted from restrictions of challenged ordinance]; *Frisco Land & Mining Co v. State of California* (1977) 74 Cal.App.3d 736, 754-755 [subdivider failed to exhaust administrative remedies where it failed to seek administrative hearing on claim of exemption based on vested rights or permit for development]; see *Stonehouse Homes LLC v. City of Sierra Madre* (2008) 167 Cal.App.4th 531, 542 [party's contention its application for a tentative tract map and conditional use permit were entitled to benefit of statutory "'safe harbor'" provision "purely conjectural" until application was complete].)

---

Fire Code. Appellant has not and cannot allege that it received these determinations from those officials.

10

Appellant contends exhaustion would be futile, as there is no basis to believe completion of a formal application for a building permit would affect the $77,000 estimate for water service, and it is "certain" that a building permit would be denied unless a hydrant were installed within 300 feet of the proposed residence. The futility exception applies "only if the party invoking it can positively state that the administrative agency has declared what its ruling will be in a particular case." (*Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1313.) A statement of opinion by city representatives other than the body charged with hearing and deciding the conditions under which the proposed residence can be built is not sufficient to allow appellant to invoke futility. (See *Burchett v. City of Newport Beach* (1995) 33 Cal.App.4th 1472, 1475-1476, fn. 1, & 1479 [city not bound by notation of city planner expressing agreement that existing nonconforming driveway could be used as driveway for two new residences]; *People ex rel. State Pub. Wks. Bd. v. Superior Court* (1979) 91 Cal.App.3d 95, 104 [commission's positions "should not be inferred from general comments of staff"].) In *South Coast Regional Com. v. Gordon*, where the property owner had been sued to restrain further construction without a permit, the court rejected the owner's contention that it would have been futile to seek an exemption to the permit requirement because the lawsuit was proof that the commission had reached its final conclusion: "[T]he fact that the Attorney General, as the representative of the commission, has taken the position on its behalf in this litigation that Gordon is not entitled to an exemption cannot be deemed the equivalent of a determination to the same effect by a vote of the commission after a public hearing." (*South Coast Regional Comm. v. Gordon*, *supra*, 18 Cal.3d at p. 838; accord, *Steinhart v. County of Los Angeles, supra*, 47 Cal.4th at pp. 1313-1314 [position taken by county in court actions insufficient basis to assume that it had predetermined its position and would have reached same decision had timely application for administrative

review been made].)  Here, appellant was provided preliminary opinions and estimates from City personnel.  Appellant did not receive a final determination from the City and cannot say with certainty what charges will be imposed or conditions enforced once the City has rendered its final decision based on specific plans for construction.  It would be premature for a court to step in at this point before the City has had an opportunity to interpret its own rules and building requirements.

The necessity of engaging in the administrative process to the end is particularly critical in the present situation.  Among other things, appellant requested that the court determine whether "a service connection could be used, instead of a main extension, and still provide adequate water [for the residence]" and whether a "1-1/4 inch service connection" would be adequate to feed a fire hydrant if the residence were made of stucco and constructed with "two-hour fire rated walls and ceiling" and "all roofs were covered with class A fire rated covering."  Courts are in no position to resolve such matters without the benefit of the expertise of City personnel knowledgeable about water supply and fire safety issues.  Once appellant has submitted specific plans, obtained a review, and learned the actual conditions under which it may be allowed to construct a residence and the applicable regulations, it will be in a better position to challenge any rule it believes was improperly interpreted.

## DISPOSITION

The judgment is affirmed.  Respondent is awarded its costs on appeal.

**CERTIFIED FOR PUBLICATION**


MANELLA, J.


We concur:


EPSTEIN, P. J.


WILLHITE, J.

13