El Juez Presidente Señor Hernández Denton
emitió la opinión del Tribunal.
La controversia ante nos requiere que examinemos la ley que creó el cargo del Fiscal Especial Independiente (F.E.I.). Éste tiene la encomienda de investigar y procesar criminalmente aquellos actos indebidos atribuidos a altos funcionarios gubernamentales. En particular, debemos de-terminar si el Panel del F.E.I. puede actuar válidamente con tan sólo dos miembros en propiedad, tras surgir una vacante por la renuncia de uno de sus tres integrantes. Tras analizar detenidamente el asunto, respondemos la in-terrogante en la afirmativa, siempre que se cumpla con el requisito de mayoría dispuesto por el estatuto para las de-cisiones de este organismo.
I
Los hechos del caso de autos no están en controversia. Las Comisiones de Asuntos del Consumidor y de Infraes-tructura de la Cámara de Representantes de Puerto Rico realizaron una investigación en torno a ciertas tarifas fija-das por la Administración Metropolitana de Autobuses (A.M.A.). Durante el transcurso de la investigación surgió información a los efectos de que un grupo de personas con impedimentos físicos, usuarios del programa Llame y Viaje de la A.M.A., no pudieron asistir a deponer a las vistas públicas y oponerse al aumento en las tarifas. Ello a pesar de haber reservado los servicios de transportación de este programa. Según la información recibida por ambas comi-siones legislativas, sus reservaciones fueron borradas del sistema computarizado, razón por la cual no se les proveyó el servicio. Tras requerir la comparecencia de la Sra. Ada-line Torres Santiago —entonces Presidenta de la A.M.A.— a una vista pública, ésta alegó desconocer el incidente y negó haber dado órdenes para cancelar el servicio.
*121 No obstante, las comisiones recibieron prueba oral y do-cumental tendiente a establecer que fue la señora Torres Santiago quien alegadamente ordenó cancelar las reservaciones. Por esta razón, la Cámara de Representan-tes refirió el asunto al Departamento de Justicia. De igual forma, el entonces Secretario de la Gobernación, Hon. Aní-bal José Torres, presentó ante el Departamento de Justicia una querella contra la señora Torres Santiago. En la que-rella, el Secretario de la Gobernación alegó que la funcio-naría posiblemente incurrió en actos ilegales mientras se desempeñaba como Presidenta y Gerente General de la A.M.A.
Luego de la investigación correspondiente, el Secretario de Justicia, Hon. Roberto J. Sánchez Ramos, refirió el caso a la Oficina del Panel sobre el Fiscal Especial Indepen-diente (Panel). Según el criterio del Secretario de Justicia, la señora Torres Santiago pudo haber incurrido en los de-litos de alteración o mutilación de propiedad y perjurio. Arts. 260 y 274 del Código Penal del Estado Libre Asociado de Puerto Rico (Código Penal), respectivamente, 33 L.P.R.A. sees. 4888 y 4902. Tras recibir el referido del Se-cretario de Justicia, el Panel decidió, por unanimidad, nombrar como Fiscal Especial Independiente al Ledo. Cé-sar López Cintrón para que investigara y analizara la evi-dencia recopilada sobre la querella presentada contra la señora Torres Santiago. Al momento de hacer esta desig-nación, el Panel sólo estaba constituido por dos de sus tres miembros; a saber, los Ledos. Ricardo Negrón Rodríguez y Juan Ortiz Tórrales. El tercer puesto estaba vacante.
Sin embargo, por entender que su designación había sido realizada por un Panel ilegalmente constituido, el li-cenciado López Cintrón decidió devolver el expediente a la Directora Ejecutiva de la Oficina del Panel para que lo custodiara. A esos efectos, en agosto de 2006 el licenciado López Cintrón le comunicó su decisión a la señora Torres Santiago. En su comunicación, explicó que, luego de recibir *122 la designación para investigar el caso, el Secretario de la Cámara de Representantes le informó oficialmente al Go-bernador de Puerto Rico, Hon. Aníbal Acevedo Vilá, que los nombramientos de los licenciados Negrón Rodríguez y Ortiz Tórrales, como miembros del Panel, habían sido recha-zados por la Cámara de Representantes el 22 de junio de 2006.
Posteriormente, durante el receso de la sesión ordinaria de la Asamblea Legislativa, el Gobernador nombró a la' Leda. Elba Rodríguez Fuentes, al Ledo. Manuel Díaz Morales y a la Leda. Gloria Iagrossi Brenes como nuevos miembros del Panel. El Gobernador no hizo ningún nom-bramiento para los puestos de miembros alternos. No obs-tante, el 24 de agosto de 2006 la licenciada Iagrossi Brenes renunció a su puesto, creando así una vacante.
Tras la renuncia de la licenciada Iagrossi Brenes, el Panel —integrado sólo por dos miembros, los licenciados Ro-dríguez Fuentes y Díaz Morales— decidió de manera uná-nime designar nuevamente al licenciado López Cintrón como F.E.I. para investigar el caso de la señora Torres Santiago. Tras la designación, la representación legal de la señora Torres Santiago envió una carta al F.E.I. En ésta adujo que el Panel no actuó conforme a derecho al desig-narlo, pues no estaba debidamente constituido. No obs-tante, el F.E.I negó esa alegación y declinó rechazar su designación. De esta forma, se reinició la investigación contra la señora Torres Santiago, la cual culminó con la presentación de un cargo por el delito de alteración o mu-tilación de propiedad y otro por perjurio. Arts. 260 y 274 del Código Penal, supra.
Así las cosas, luego de determinarse que existía causa probable para el arresto de la señora Torres Santiago y señalarse la fecha para la vista preliminar, la defensa de la señora Torres Santiago presentó una moción de desestimación. En ésta, adujo que el F.E.I. carecía de auto-ridad en ley para presentar los cargos, debido a que había *123 sido designado por un Panel de sólo dos miembros, no con-firmados por la Asamblea Legislativa. Luego de evaluar los argumentos de las partes, el foro de instancia declaró “no ha lugar” la moción de desestimación.
Inconforme con la determinación del tribunal de instan-cia, la señora Torres Santiago recurrió ante el Tribunal de Apelaciones y le imputó al foro primario haber errado al denegar su solicitud de desestimación por falta de jurisdic-ción del F.E.I. A esos efectos, alegó nuevamente que el Panel que designó como F.E.I. al licenciado López Cintrón para investigar la querella presentada en su contra no es-taba debidamente constituido ni confirmado por la Asam-blea Legislativa. En cuanto a la falta de confirmación, adujo que ello representaba una situación de conflicto de interés para los miembros del Panel, ya que la investiga-ción que dio paso a los cargos en su contra se inició en la Cámara de Representantes. Este cuerpo, a su vez, debía pasar juicio sobre las nominaciones al Panel hechas por el Gobernador.
El Tribunal de Apelaciones revocó el dictamen emitido por el tribunal de instancia. El foro apelativo determinó que la decisión y el proceso de evaluar, dirimir y realizar el nombramiento del F.E.I. le correspondía a un panel consti-tuido por tres miembros y no dos como ocurrió en el caso de autos. Ese tribunal concluyó que el hecho de que la Ley Núm. 2 de 23 de febrero de 1988, conocida como la Ley del F.E.I., 3 L.P.R.A. sec. 99h et seq., provea para el nombra-miento de dos miembros alternos del Panel es señal de la intención del legislador de que siempre el Panel esté cons-tituido por el número de miembros establecidos en el estatuto. En consecuencia, el Tribunal de Apelaciones re-solvió que para que el Panel pueda ejercer sus funciones debe estar integrado por tres miembros.
De esa determinación recurre ante nos el Ministerio Pú-blico, representado por el F.E.I. Aduce, en esencia, que erró el Tribunal de Apelaciones al determinar que el Panel no *124 estaba debidamente constituido al emitir la resolución, mediante la cual se designó al licenciado López Cintrón como F.E.I. en este caso. La señora Torres Santiago tam-bién compareció oportunamente y reiteró los argumentos esbozados ante el Tribunal de Apelaciones.
Por su parte, el Procurador General solicitó intervenir como amigo de la corte, a lo que accedimos. En su compa-recencia, el Procurador General resaltó el alto interés pú-blico que reviste la controversia y adujo que para cumplir con el requisito de mayoría dispuesto por la ley para la toma de decisiones por parte del Panel, no es necesario que cuente con la totalidad de sus miembros. Según su criterio, basta con la concurrencia de más del cincuenta por ciento de los miembros participantes; es decir, una mayoría simple.
Examinado el recurso, expedimos el auto. Con el bene-ficio de la comparecencia de las partes, así como la del Procurador General en calidad de amicus curiae, procede-mos a resolver.
II
La Ley Núm. 2, supra, creó la figura del F.E.I. con el propósito de prevenir, erradicar y penalizar cualquier comportamiento delictivo o indebido de los funcionarios gubernamentales, a fin de restaurar la confianza del Pueblo en su gobierno y en sus servidores públicos. En conformidad con la Ley Núm. 2, supra, el F.E.I. tiene la encomienda de acudir a los tribunales de justicia, en representación del Estado Libre Asociado de Puerto Rico, para instar las acciones criminales que procedan como resultado de las investigaciones que realice sobre los asuntos ante su consideración. 3 L.P.R.A. sec. 99j.
De igual forma, la Ley Núm. 2, supra, estableció un Panel compuesto por tres miembros ex jueces del Tribunal Supremo, del Tribunal de Apelaciones o del Tribunal de *125 Primera Instancia, quienes deben ser nombrados por el Go-bernador con el consejo y consentimiento del Senado y la Cámara de Representantes. 3 L.P.R.A. .sec. 99q. El Panel tiene a su cargo la supervisión del F.E.I., quien será el res-ponsable de encausar criminalmente a los funcionarios gu-bernamentales cubiertos por la Ley Núm. 2, supra.
Según esta ley, los funcionarios cubiertos por el estatuto son: (1) el Gobernador; (2) los Secretarios y Subsecretarios de Departamentos del Gobierno; (3) los jefes y subjefes de agencias; (4) los Directores Ejecutivos de las corporaciones públicas; (5) los alcaldes; (6) los miembros de la Asamblea Legislativa de Puerto Rico; (7) los asesores y ayudantes del Gobernador; (8) los jueces, y (9) todo individuo que haya ocupado cualesquiera de los cargos enumerados, a quien se le impute la comisión de cualquier delito grave, y menos grave incluido en la misma transacción o evento, y los delitos contra los derechos civiles, la función pública y el erario, mientras ocupaba uno de los cargos mencionados. Lo anterior está sujeto a que la designación del F.E.I. se haga en los cuatro años siguientes a la fecha cuando el funcionario investigado cesó en su cargo. 3 L.P.R.A. sec. 99k.
La facultad que la Ley Núm. 2, supra, concede al F.E.I. para procesar criminalmente a funcionarios gubernamentales es excepcional, ya que el Secretario de Justicia no comparecerá como representante legal del Pueblo de Puerto Rico para instar la causa penal a través de los fiscales del Departamento de Justicia. Como es sabido, el Secretario de Justicia es el funcionario encargado de promover el cumplimiento y la ejecución de las leyes, así como de investigar y encausar cualquier violación a las leyes penales. 3 L.P.R.A. see. 292. El objetivo del mecanismo establecido en la Ley Núm. 2, supra, es que la investigación y el procesamiento de funcionarios públicos se conduzca según criterios objetivos e imparciales, sin que medien favoritismos ni persecuciones por razones partidistas. *126 Véase Pueblo v. Rexach Benitez, 130 D.P.R. 273, 295 (1992).
En conformidad con la Ley Núm. 2, supra, el Secretario de Justicia realizará una investigación preliminar en todo caso en que reciba información bajo juramento que, a su juicio, constituya una causa suficiente para investigar si se ha cometido cualquier delito incluido en el estatuto por alguno de los funcionarios gubernamentales cubiertos por la Ley Núm. 2, supra. El Secretario deberá completar la investigación preliminar en un término prorrogable de noventa días. 3 L.P.R.A. sec. 99o. Una vez el Secretario haya concluido dicha investigación, éste remitirá un informe y el expediente del caso al Panel. Ello independientemente de que su recomendación sea que no se designe un F.E.I. 3 L.P.R.A. sec. 99k.
Luego de recibir el expediente del caso y el informe del Secretario de Justicia, corresponde al Panel determinar si procede o no la designación de un F.E.I. 3 L.P.R.A. sec. 99r. Asimismo, será el F.E.I. quien, luego de la correspondiente designación, estará a cargo de la investigación y determi-nará si deben presentarse denuncias contra el funcionario investigado. Como expresáramos, el F.E.I. tendrá jurisdic-ción exclusiva para investigar y procesar aquellas acciones penales contenidas en la encomienda que se le asigne. 3 L.P.R.A. sec. 99t.
Sobre la composición del panel, la Ley Núm. 2, supra, dispone que el Gobernador designará, con el consejo y consentimiento de la mayoría del total de los miembros que componen el Senado y la Cámara de Representantes, un panel integrado por tres miembros en propiedad con experiencia en el campo del derecho penal. Estos serán seleccionados entre los ex jueces del Tribunal Supremo, del Tribunal de Apelaciones o del Tribunal de Primera Instancia. El Gobernador también designará de igual forma a dos miembros alternos que formarán parte del panel en caso de inhibición o de alguna otra circunstancia *127 que le impida a cualquier miembro en propiedad desempe-ñar sus funciones. 3 L.P.R.A. sec. 99p. Cabe destacar que la Ley Núm. 2, supra, dispone que las decisiones del Panel se tomarán por mayoría, sin establecer un requisito específico de quorum.
III
En el caso de autos, el Tribunal de Apelaciones deter-minó que el Panel que designó un F.E.I. para investigar la querella presentada contra la señora Torres Santiago no estaba debidamente constituido. Ello, porque al momento de hacer la designación, existía una vacante en ese Panel. En efecto, ante la renuncia de la licenciada Iagrossi Bre-nes, la designación del licenciado López Cintrón como F.E.I. fue hecha por los licenciados Díaz Morales y Rodrí-guez Fuentes, quienes tomaron esa determinación de forma unánime. Por ello, debemos determinar si la desig-nación cumplió con el requisito de mayoría establecido en la Ley Núm. 2, supra, para esas determinaciones y si erró el foro apelativo al concluir que el Panel debe estar inte-grado por sus tres miembros para poder ejercer sus funciones. Veamos.
Como es sabido, al interpretar un estatuto el foro judicial debe remitirse al texto de la ley, pues cuando el legislador se ha expresado de manera clara e inequívoca, el texto de la medida es la expresión por excelencia de la intención legislativa. Romero Barceló v. E.L.A., 169 D.P.R. 460 (2006). El lenguaje empleado por el legislador es siempre decisivo. E. Bernier y J.A. Cuevas Segarra, Aprobación e interpretación de la leyes en Puerto Rico, 2da ed., San Juan, Pubs. J.T.S., 1987, T. I, pág. 267. Nuestro análisis sobre la Ley Núm. 2, supra, debe, además, enmarcarse en lo que fue el objetivo principal del legislador al aprobarla.
Sobre el particular, es menester señalar que con esta ley el legislador quiso garantizar la absoluta objetivi- *128 dad en las investigaciones contra altos funcionarios del Gobierno. De igual forma, el legislador quiso proveer un foro neutral e independiente para dilucidar supuestos o reales actos indebidos atribuibles a funcionarios gubernamentales. Véase la Exposición de Motivos de la Ley Núm. 2 (1988 Leyes de Puerto Rico 5-6).
En cuanto a la controversia particular del caso de autos, la Ley Núm. 2, supra, no establece un requisito de quorum para que el Panel pueda tomar sus determinaciones. Por el contrario, el único requisito establecido en dicho estatuto es que las decisiones sean tomadas por mayoría.(1) En su comparecencia, el F.E.I. sugiere que —en vista de que la ley no es específica— interpretemos que la exigencia de mayoría, se trata de un requisito de mayoría simple. Esto en oposición a los otros tipos de mayoría; a saber, la abso-luta y la extraordinaria. Según su razonamiento, al ser el Panel un cuerpo colegiado compuesto por tres miembros, la mayoría la constituyen dos de sus integrantes. Argumenta, pues, que ese sería el número de votos necesarios para la validez de las determinaciones del Panel. (2)
*129 Examinados los argumentos presentados, creemos que —en efecto— si el legislador hubiese querido establecer un requisito adicional al requisito de mayoría para las decisiones del Panel, como lo sería exigir un quorum mínimo, así lo pudo haber dispuesto al aprobar la Ley Núm. 2, supra. De hecho, resulta pertinente destacar que el legislador ha hecho este tipo de precisión (incluyendo un requisito del quorum mínimo) al aprobar las leyes orgánicas de otros organismos gubernamentales colegiados.
Ejemplo de lo anterior son la Comisión de Investigación, Procesamiento y Apelación (CIPA), la Comisión de Relacio-nes del Trabajo del Servicio Público, la Junta de Planifica-ción, la Comisión Apelativa de Administración de Recursos Humanos del Servicio Público (CASARH) y la Comisión de Servicio Público, cuyas leyes orgánicas establecen expresa-mente cuál es el quorum necesario para sus acuerdos. En el caso de la CIPA, su ley orgánica dispone que constitui-rán quorum para tomar acuerdos tres de los cinco comisio-nados que componen el organismo. 1 L.P.R.A. see. 173. En cuanto a la Comisión de Relaciones del Trabajo, la cuál se compone de un Presidente y dos miembros asociados, el requisito de quorum para sus determinaciones son dos de sus miembros. 3 L.P.R.A. sec. 1452r. Por su parte, la Ley Orgánica de la Junta de Planificación establece como re-quisito de quorum la presencia de la mayoría de los miem-bros de la Junta o de una sala. 23 L.P.R.A. sec. 62h.
De igual forma, el legislador dispuso expresamente que constituirán quorum para las determinaciones de CA-SARH dos de sus tres miembros. 3 L.P.R.A. sec. 1468f. Así también, al crear la Comisión de Servicio Público, la Asam-blea Legislativa se expresó en términos específicos en cuanto al requisito de quorum para las determinaciones de *130 dicha agencia. Sobre el particular, la Ley del Servicio Pú-blico establece que constituirán quorum, para una sesión de la Comisión en pleno, tres miembros. Cuando la Comi-sión está dividida en salas constituirán quorum dos de los comisionados. 27 L.P.R.A. see. 1053.
No obstante, en otras ocasiones, como ocurre en el caso de autos, el legislador ha establecido un requisito de ma-yoría sin hacer referencia a requisito de quorum alguno. Ejemplo de ello es la Junta de Calidad Ambiental, cuya ley orgánica se limita a disponer que sus acuerdos o determi-naciones se tomarán con el voto afirmativo de la mayoría de sus miembros. 12 L.P.R.A. sec. 8002a. De igual forma, la Ley Orgánica de la Junta de Libertad bajo Palabra dispone que los acuerdos de la Junta deben ser adoptados por mayoría. 4 L.P.R.A. see. 1501.(3) Ninguna de estas leyes establece un requisito de quorum para los organismos en cuestión, por lo que sus decisiones son válidas siempre y cuando cumplan con el requisito de mayoría dispuesto en su ley orgánica.
A modo comparativo, en la jurisdicción federal el Tribunal Supremo de Estados Unidos se enfrentó a una contro-versia muy similar a la de autos en FTC v. Flottil Products, Inc., 389 U.S. 179 (1967). En dicho caso, la Comisión Federal de Comercio (F.T.C., por sus siglas en inglés) en vota-ción de dos a uno, emitió una orden de cese y desista contra una corporación. En la deliberación sólo participaron tres de los cinco comisionados del F.T.C., debido al retiro de los otros dos comisionados antes de que la agencia emitiera la decisión.
La Corte de Apelaciones de Estados Unidos para el Segundo Circuito revocó la orden emitida por la F.T.C., al concluir que tal decisión era inválida, ya que no contó con *131 la concurrencia de al menos tres comisionados. No obs-tante, el Tribunal Supremo federal revocó esa determinación. El Máximo Foro federal fundamentó su de-cisión en una antigua norma del common law que esta-blece que, en ausencia de una disposición estatutaria sobre el quorum mínimo requerido, es suficiente la concurrencia de una mayoría simple de los miembros de un cuerpo cole-giado para que este cuerpo pueda actuar válidamente. Véase FTC v. Flotill Products, Inc., supra.
Esta norma ha sido reiterada por los tribunales federales. Así, a modo de ejemplo, en Assure Competitive Transp., Inc. v. United States, 629 F.2d 467 (7mo Cir. 1980), se validó una decisión de la Comisión de Comercio Interestatal tomada con la participación de sólo cinco de sus once miembros. La Corte de Apelaciones para el Sép-timo Circuito fundamentó su determinación en la decisión tomada por el Tribunal Supremo federal en FTC v. Flotill Products, Inc., supra, yen la antigua norma del common law allí acogida. De igual forma, en Ho Chong Tsao v. Immigration and Naturalization Service, 538 F.2d 667 (5to Cir. 1976), la Corte de Apelaciones de Estados Unidos para el Quinto Circuito validó una orden de deportación emitida por la Junta Apelativa de Inmigración, a pesar de las ale-gaciones del peticionario de que la decisión era inválida por haber sido tomada por sólo tres de los cinco miembros de la junta. La corte determinó que una mayoría simple de los miembros de la Junta estaba autorizada a actuar en nombre del organismo gubernamental.
Varios tribunales estatales en Estados Unidos también han seguido y citado con aprobación la referida norma. En Levinson v. Bd. of Chiropractic Exam., 560 A.2d 403 (1989), la Corte Suprema de Connecticut validó la decisión de la Junta Examinadora de Quiroprácticos de ese estado de suspenderle la licencia a dos quiroprácticos por con-ducta impropia. Fundamentándose en la norma de FTC v. Flotill Products, Inc., supra, el máximo foro judicial del *132 estado de Connecticut concluyó que dos miembros de la Junta constituían la mayoría requerida y que éstos tenían la autoridad para actuar en nombre del organismo com-puesto por tres miembros. Igual curso de acción han se-guido las cortes supremas y de apelaciones de otros estados.(4)
Ciertamente, la antigua norma del common law utili-zada por los tribunales federales y los tribunales de varios estados para resolver controversias similares a ésta es equiparable a la norma de interpretación estatutaria que, en esencia, postula que si la letra de la ley es clara, debe ser respetada por ser la mejor expresión de la intención legislativa. En este caso, si el legislador se limitó a reque-rir que las decisiones sean tomadas por mayoría —pu-diendo haber incluido un requisito de quorum mínimo, como ha hecho en otros estatutos orgánicos de organismos colegiados— debemos interpretar que su intención fue es-tablecer dicho criterio como el único requisito para tomar tales determinaciones y que, por lo tanto, no fue su inten-ción requerir la presencia de todos los miembros del Panel para que éste pueda actuar válidamente.
Si bien la Ley Núm. 2, supra, provee para el nombramiento de dos miembros altemos, de forma que éstos se integren al Panel en caso de que cualquier miembro en propiedad se tenga que inhibir o por cualquier otra circunstancia no pueda desempeñar sus funciones, el estatuto no contempla situaciones en que surjan vacantes en el Panel, como ocurrió en el caso de autos. Por ello, acoger la interpretación del Tribunal de Apelaciones de que la disposición es señal de la intención del legislador de que el Panel siempre estuviese constituido por tres miembros para *133 poder actuar válidamente, no sería cónsono con la letra de la ley, ni con la política pública establecida por la Asamblea Legislativa de asegurar un foro neutral que dilucide posi-bles actos delictivos de funcionarios públicos. Además, su-pondría un requisito adicional para la validez de las deci-siones del Panel no contemplado en la ley.
A la luz de lo anterior, concluimos que la determinación de designar al licenciado López Cintrón como F.E.I para investigar la querella presentada contra la señora Torres Santiago fue una decisión válida que cumplió con el requi-sito de mayoría establecido en la Ley Núm. 2, supra. De esta forma rechazamos el argumento esbozado por la peti-cionaria a los efectos de que la vacante surgida en el Panel, tras la renuncia de la licenciada Iagrossi Brenes, privó a dicho cuerpo de autoridad para actuar sobre el referido he-cho en su contra por el Secretario de Justicia.
Resolver de otra forma tendría el efecto de privar al organismo de toda autoridad cuando ocurra un impasse entre el Ejecutivo y el Legislativo para llenar cualquier vacante surgida en el Panel. Ello, a pesar de la política pública que motivó la aprobación de la Ley Núm. 2, supra, y la clara intención legislativa de crear un foro neutral e independiente para dilucidar supuestos actos indebidos atribuibles a funcionarios públicos y, además, proveerle a funcionarios honestos un medio efectivo para preservar su integridad y reputación. Véase la Exposición de Motivos de la Ley Núm. 2, supra.
IV
En vista de todo lo anterior, se revoca el dictamen emi-tido en este caso por el Tribunal de Apelaciones y se de-vuelve el caso al foro de instancia para que continúe con los trámites ulteriores conforme a lo aquí resuelto.

Se dictará sentencia de conformidad.

*134 La Juez Asociada Señora Rodríguez Rodríguez disintió con una opinión escrita.

 Es menester destacar la diferencia entre los términos mayoría y quorum. Por un lado, el concepto mayoría es un término utilizado comúnmente en el procedi-miento parlamentario para referirse a la cantidad de personas requeridas a favor de algo para su aprobación. En términos muy sencillos, mayoría es más de la mitad. R.B. Bothwell, Manual de Procedimiento Parlamentario, 2da ed., San Juan, Ed. U.P.R., 1994, pág. 6. Por otro lado, quorum se refiere a la cantidad mínima de per-sonas presentes en una reunión para que ésta sea válida y legal. Véase C.E. Carrión, Manual Sencillo de Reglas Parlamentarias, 2da ed., San Juan, Pubs. Puertorrique-ñas, 2000, pág. 41. De igual forma, el profesor Bothwell opina que el quorum es el número mínimo de miembros presentes en la asamblea exigido para que pueda ha-blarse a nombre de la totalidad o pueda expresarse oficialmente. R.B. Bothwell, op. cit., págs. 10-11. En resumen, quórum se refiere al número de personas requeridas para que un cuerpo colegiado pueda reunirse a deliberar válidamente, mientras que “mayoría” se refiere al número de votos necesarios para que una decisión sea válida.

 A modo ilustrativo, este Tribunal, el cual funciona como un cuerpo colegiado, al enfrentarse con la pregunta de si tiene jurisdicción para resolver un caso, aun cuando su composición sea menor a la dispuesta en la Constitución del Estado Libre Asociado de Puerto Rico, resolvió en la afirmativa. En Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 392 (1985), el Tribunal determinó que la composición de cinco jueces establecida en nuestra Constitución no es un requisito jurisdiccional para la adjudicación de controversias. Según este precedente, el único requisito para dispo-ner de una controversia por parte de este Tribunal es la concurrencia de la mayoría de los miembros que participen en la decisión. La única excepción es la declaración *129 de inconstitucionalidad de una ley, en cuyo caso la Constitución establece un requi-sito de mayoría absoluta. Al disponer del caso el Tribunal expresó que resolver de otra forma sería dejar a la Rama Judicial a merced de los Poderes Ejecutivo y Legislativo. Véase íd., págs. 394-396.

 Dicha Junta puede funcionar en paneles de tres miembros. En esos casos, los paneles sólo podrán constituirse con la totalidad de sus miembros y sus acuerdos serán adoptados por unanimidad. Véase la Ley Orgánica de la Junta de Libertad Bajo Palabra.

 Entre ellos se encuentran los estados de Alaska, Massachusetts, California y Alabama. Véanse: Alaska Federation v. Alaska Utilities, 879 P.2d 1015 (Alaska 1997); Osberg v. Planning Bd. of Sturbridge, 687 N.E.2d 1274 (1997); Stanson v. San Diego Coast Regional Com., 161 Cal. Rptr. 392 (1980); Mann v. Key, 345 So.2d 293 (1977).