[No. F043143. Fifth Dist. Oct. 26, 2004.]

TRI-COUNTY SPECIAL EDUCATION LOCAL PLAN AREA et al.,
Plaintiffs and Appellants, v.
COUNTY OF TUOLUMNE et al., Defendants and Respondents.

564

566

## COUNSEL

Gregory A. Wedner, Elaine M. Yama and Lozano Smith for Plaintiffs and Appellants.

Marko H. Fong for Sonoma County Office of Education as Amicus Curiae on behalf of Plaintiffs and Appellants.

Shupe and Finkelstein and Diane E. Finkelstein for California School Board Association Alliance as Amicus Curiae on behalf of Plaintiffs and Appellants.

Protection & Advocacy, Inc., Stephen A. Rosenbaum, Sherri L. Rita, Dale Mentink; Youth and Education Law Clinic and William S. Koski for United Advocates for Children as Amicus Curiae on behalf of Plaintiffs and Appellants.

Gregory J. Oliver, County Counsel, Paul Griebel and Walter J. de Lorrell III, Deputy County Counsel, for Defendants and Respondents.

Jennifer B. Henning for The California State Association of Counties as Amicus Curiae on behalf of Defendants and Respondents.

Livingston & Mattesich Law Corporation and Karen L. Turner for California Mental Health Directors Association as Amicus Curiae on behalf of Defendants and Respondents.

## OPINION

**VARTABEDIAN, Acting P. J.**—This is an appeal from judgment entered after the trial court sustained respondents' demurrer to appellants' complaint; the court denied appellants leave to amend. The case involves the duty to

provide mental health services to handicapped students; the appeal involves somewhat novel questions of exhaustion of administrative remedies in the context of disputes between governmental agencies. We will conclude that both appellants and respondents have failed to exhaust administrative remedies. Accordingly, we will affirm the judgment but disagree with one of the trial court's grounds for sustaining the demurrer.

## FACTS AND PROCEDURAL HISTORY

■ Because judgment was entered upon the granting of demurrer, our summary of facts is limited to those pled in the complaint, together with facts judicially noticeable. (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 672 [34 Cal.Rptr.2d 386, 881 P.2d 1083].)

### A. *The Parties*

Appellant Tri-County Special Education Local Plan Area is a public entity organized pursuant to Education Code section 56195 et seq. It is alleged to be "responsible for assuring access to special education and related services for individuals with exceptional needs who reside within [Tuolumne, Amador, and Calavaras Counties], administering the special education local plan, and providing funding for the educational needs of students placed in residential facilities." Appellant Tuolumne County Special Education Unit "is an entity created by agreement of Tuolumne County school districts to consolidate services under their Special Education Local Plan." It "is a public entity responsible for ensuring that all individuals with exceptional needs who reside within Tuolumne County are provided equal access to special education programs . . . and for ensuring compliance with . . . State and Federal laws, statutes, and regulations" relating to such individuals. There is no need to distinguish between the two appellants for purposes of this appeal, and we will refer to them jointly as appellants.

Respondents are the County of Tuolumne; its board of supervisors; the supervisors individually; and the county administrator, county counsel, and the county director of mental health, all sued in their official capacities and as individuals.

### B. *The Statutory Framework*

■ The State of California receives funds under the federal Individuals with Disabilities Education Act (IDEA), 20 United States Code section 1400 et seq. As a result, it must comply with the requirements of the act. (See 20 U.S.C. § 1412(a).) In order to do so, the Legislature enacted certain provisions of the Government Code, as particularly relevant to the present appeal, sections 7573 and 7576.

██ The primary goal of IDEA is to ensure that children with disabilities receive special education and related services "designed to meet their unique needs and prepare them for employment and independent living." (See 20 U.S.C. § 1400(d).) By means of Government Code sections 7573 and 7576, the Legislature has divided responsibility for educational services and mental heath services between the Superintendent of Public Instruction and the "Department of Mental Health, or any community mental health service." (Gov. Code, § 7576, subd. (a).)

██ In that division of services, the Superintendent of Public Instruction is required to ensure that local educational agencies provide the educational and related services necessary and appropriate under a child's individualized education plan. However, local educational agencies "shall be responsible only for the provision of those services which are provided by qualified personnel whose employment standards are covered by the Education Code and implementing regulations." (Gov. Code, § 7573.) Each county's community mental health service is "responsible for the provision of assessments and mental health services" included in an individualized education plan. (Cal. Code Regs., tit. 2, § 60200.)

## C.  *The Problem*

According to respondents, state funding to counties for IDEA mental health services in the 2001–2002 fiscal year was $47 million. In the 2002–2003 fiscal year, that funding was reduced to $1,000 statewide.

In response to this reduction in funding, the individual respondents recommended action or acted (depending on their position within county government) to terminate the provision to special education students of mental health services required by their individualized education plans. Termination was effective January 1, 2003.

According to appellants' complaint, as a result of respondents' actions, appellants "will be obligated to provide mandated mental health services" previously provided and paid for by respondents.

## D.  *Proceedings in the Trial Court*

Appellants sued respondents on February 14, 2003, seeking to force the county to continue providing mental health services and to repay appellants for funds spent to provide services after respondents' original termination of services. (We will discuss certain of these causes of action more particularly as we address the issues below.) The governmental-entity respondents demurred to the complaint, contending (as relevant here) appellants had failed

to exhaust administrative remedies and that the county was relieved of the duty to provide services because the statutory obligation was an unfunded state mandate. The individual respondents separately demurred, asserting immunity for legislative acts, absence of a personal duty to provide services, and failure to exhaust administrative remedies.

After hearing, the trial court sustained both demurrers without leave to amend. As to the governmental respondents, the court concluded appellants had failed to exhaust administrative remedies and that the county had no duty to provide services under an unfunded state mandate. In addition, the court concluded, as to the individual respondents, that all of their actions "were within the sphere of legislative activity for which they are absolutely immune." The court ordered dismissal of the complaint. Appellants filed a timely notice of appeal.

## DISCUSSION

Appellants contend respondents are not entitled to assert as a defense that their duties under Government Code section 7576 were excused by the failure of the Legislature to fund that mandate. Appellants also contend the available administrative remedies were insufficient to provide relief and that exhaustion of those remedies was, as a result, excused. Finally, they contend certain of the causes of action do not, as a matter of law, require exhaustion of administrative remedies before commencement of judicial action.

A. *Unfunded State Mandates*

The California Constitution provides: "Whenever the Legislature or any state agency mandates a new program or higher level of service on any local government, the state shall provide a subvention of funds to reimburse such local government for the costs of such program or increased level of service," with exceptions not relevant here. (Cal. Const., art. XIIIB, § 6 (hereafter, section 6).)

The Legislature has created a set of remedies if a local government claims a violation of section 6. First, local governments are not required to implement a program if a court, the Legislature, or the Commission on State Mandates (hereafter, the Commission) has identified the program as a new mandate or a mandate for a higher level of service, *and* if the Legislature has "specifically" identified the program as a mandate for which no funding is provided. (Gov. Code, § 17581, subd. (a).) To meet the requirement of being specifically identified by the Legislature, the program must be "included within the schedule of reimbursable mandates shown in the Budget Act and it is specifically identified in the language of a provision of the item providing

the appropriation for mandate reimbursements." (Gov. Code, § 17581, subd. (a)(2).) If these conditions are met, the local government is permitted to make its own determination not to implement the mandate.

■ If a county believes state funding for a mandated program is *inadequate*, the local government may file a claim with the Commission and, if the claim is denied, seek review by writ of administrative mandate in superior court. (*Redevelopment Agency v. Commission on State Mandates* (1996) 43 Cal.App.4th 1188, 1195 [51 Cal. Rptr. 2d 100].) In addition, after spending funds on state mandated programs, the local government may file a claim for reimbursement with the Commission, whose decision is judicially reviewable. (Gov. Code, § 17559.) If the Legislature refuses to fund a program identified by the Commission as a reimbursable state mandate, the local government may file an action for declaratory relief in "the Superior Court of the County of Sacramento . . . to declare the mandate unenforceable and enjoin its enforcement." (Gov. Code, § 17612, subd. (c).)

■ Thus, a county is excused from duties imposed under a state mandate if the Legislature specifically states that the mandated program is not funded or if the superior court in Sacramento declares the program an unfunded mandate.[1] These avenues for relief from duties imposed by state mandate are exclusive. (*Central Delta Water Agency v. State Water Resources Control Bd.* (1993) 17 Cal.App.4th 621, 641 [21 Cal.Rptr.2d 453].) "Until [local agencies] have exhausted their administrative remedy before the Commission, [they] cannot know whether the statute imposes a state-mandated cost" (*ibid.*) or whether that cost will be reimbursed pursuant to the Commission's award on a claim. Without first exhausting the administrative remedies, the local agency cannot claim a section 6 violation in defense of its failure to perform its duty. (See *Central Delta Water Agency, supra,* at p. 641.) After a determination by the Commission that reimbursement is due, but only then, may the local government bring a traditional

---

[1] In the normal course, this matter was submitted for decision at oral argument on September 14, 2004. On October 1, 2004, respondents filed a motion to vacate submission. The motion contended that a final declaratory judgment of the Superior Court for Sacramento County in an action by certain counties against the State of California (case No. 04AS000371) had become final and was determinative of the present case as a matter of collateral estoppel. The judgment in the Sacramento County case stated: "[J]udgment is entered in favor of plaintiff counties San Diego, Sacramento, Orange and Contra Costa on the cause of action for declaratory relief. Plaintiff counties need not provide the AB 3632 or AB 2726 services absent adequate, good faith funding from the State." Respondents have advised this court that the Sacramento County judgment has become final by virtue of the failure of any party to file a notice of appeal in a timely manner.

We deny the motion to vacate submission. The present case does not raise the question whether the programs in question are an unfunded state mandate. Rather, the present case concerns the appropriate method by which a county may be relieved of its duty under a program it contends is an unfunded mandate and the method for interagency enforcement of duties under IDEA. The judgment of the Sacramento County Superior Court does not address these issues.

mandamus action or proceed pursuant to Government Code section 17612. (*Carmel Valley Fire Protection Dist. v. State of California* (1987) 190 Cal.App.3d 521, 548 [234 Cal.Rptr. 795].)[2]

Attempting to avoid the body of law just discussed, respondents mischaracterize both the law and the Legislature's actions. Respondents provide the following erroneous summary of Government Code section 17581, subdivision (a): "When [state] funds are not provided . . . , the County is no longer '. . . required to implement or give effect to . . .' the statute mandating the provision of services. <u>Government Code</u> section 17581(a)." As set forth above, however, legislative action provides self-executing relief of local governments from mandated duties only when the Legislature specifically states that the mandate is not funded. (Gov. Code, § 17581, subd. (a)(2).)

■  Accordingly, respondents are also wrong when they claim that the Legislature, in providing only nominal funding for the mandate, enacted "the functional equivalent of no funds for the program," as contemplated in Government Code section 17581, subdivision (a)(2). This is a misstatement because there is no "functional equivalent" to the legislative action specified in section 17581. Simply put, the Legislature has not specifically identified the mental health services mandate as unfunded.

Respondents give only one reason in urging us to ignore the plain requirement of Government Code section 17581. They argue: "In construing the meaning of a statutory provision, the language should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend."

■  The intent of the Legislature, however, could not be more clear: until and unless a court or the Legislature itself has relieved a local government of a statutory mandate, the local government must perform the duties imposed by the mandate. In establishing an exclusive remedy by which local governments may claim funding for mandated programs (see Gov. Code, § 17552), the Legislature has ensured an orderly procedure for resolving these issues, eschewing the local government anarchy that would result from recognizing a county's ability sua sponte to declare itself relieved of the statutory mandate.[3]

---

[2] A limited exception to the exhaustion of remedies requirement applies where one local government has filed a test claim relating to the same state mandate and the administrative process on that test claim is complete. In that circumstance, the administrative record can be made available and a second local government may proceed without itself exhausting a futile administrative process. (*County of San Diego v. State of California* (1997) 15 Cal.4th 68, 89 [61 Cal.Rptr.2d 134, 931 P.2d 312].)

[3] We grant respondents' request for judicial notice filed January 5, 2004, consideration of which previously was deferred. As stated in the text, however, the designation of a program as

For the foregoing reasons, we conclude the trial court erred in sustaining respondents' demurrers on the basis that appellants' complaint asserted duties under an unenforceable unfunded state mandate.

## B. *Appellants' Failure to Exhaust Administrative Remedies*

As an alternative basis for sustaining the demurrer, the trial court found appellants had failed to exhaust available administrative remedies. Appellants contend the available remedies were inadequate (and therefore excused) and that certain of their causes of action did not require exhaustion of administrative remedies.

■ Appellants' discussion of the exhaustion of remedies issue in its opening brief focuses solely on Government Code section 7585. That section permits a local agency (as well as a parent or adult pupil) to file an administrative complaint when another local agency fails to provide services required by an individualized education plan. (Gov. Code, § 7585, subd. (a); see also Cal. Code Regs., tit. 2, § 60600, subd. (b).)[4] Appellants correctly point out that courts have excused compliance with piecemeal administrative remedies when the issues to be litigated involve systemic shortfalls incapable of resolution in an available administrative proceeding. (See *Glendale City Employees' Assn., Inc. v. City of Glendale* (1975) 15 Cal.3d 328, 342–343 [124 Cal.Rptr. 513, 540 P.2d 609].)

■ The individualized hearing contemplated by Government Code section 7585 is not, however, the only available administrative procedure. As appellants recognize in their reply brief, an administrative procedure specifically targeted at the kind of dispute now before us is contained both in California administrative regulations and in the underlying federal legislation.

20 United States Code section 1412(a)(12)(B)(ii) provides, as relevant here: "If a public agency other than an educational agency fails to provide or pay for . . . special education and related services . . . , the local educational agency . . . shall provide or pay for such services to the child. Such local educational agency . . . may then claim reimbursement for the services from the public agency that failed to provide or pay for such services and such public agency shall reimburse the local educational agency . . . according to the procedures established" in the interagency agreement required by an earlier provision (20 U.S.C. § 1412(a)(12)(A)(i)).

---

"unfunded" by the Legislative Analyst's Office does not vest any power in a local government unilaterally to terminate an "unfunded" program.

[4] We grant appellants' request for judicial notice filed September 18, 2003, consideration of which previously was deferred.

The "procedures established" are specified in the state regulations adopted pursuant to Government Code section 7587 . California Code of Regulations, title 2, section 60560, provides: "Allegations of failure by . . . [a] Community Mental Health Service[] . . . to comply with these regulations, shall be resolved pursuant to Chapter 5.1, commencing with Section 4600, of Division 1 of Title 5 of the California Code of Regulations," entitled "Uniform Complaint Procedures."

The uniform complaint procedures provide for an investigation and report by the state Superintendent of Public Instruction whenever a "complainant alleges that a public agency, other than a local educational agency . . . , fails or refuses to comply with an applicable law or regulation relating to the provision of free appropriate public education to handicapped individuals." (Cal. Code Regs., tit. 5, § 4650, subd. (a)(viii)(A).)

Notwithstanding the federal statutory requirement that appellants "provide or pay" for necessary services and then seek reimbursement through the interagency procedure, appellants contend they are not required to follow this route because respondents did not identify this procedure below as one to be exhausted and the procedure does not permit an adequate remedy.

This contention is both factually and legally incorrect: Factually, respondents did identify the uniform complaint procedures as a full and adequate administrative remedy in documents filed in the trial court. Legally, we review the judgment of the trial court, not its reasoning, and we affirm if that judgment is correct. (See 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 340, pp. 382–383.) The trial court did not specify the administrative remedy appellants had failed to exhaust, but the applicability of the uniform complaint procedures is an issue of law properly determined on appeal.

Nor do we agree with appellants that the administrative remedy is inadequate. Although the regulations specify that the Superintendent of Public Instruction may elect to sanction a local agency by withholding funds (see Cal. Code Regs., tit. 5, § 4670, subd. (a)(1)), that remedy is not exclusive. The regulation itself permits the superintendent to file an action in a court of competent jurisdiction to compel the local agency's compliance. (Cal. Code Regs., tit. 5, § 4670, subd. (a)(3).) Further, the regulation generally permits the superintendent to use "any means authorized by law to effect compliance." (Cal. Code Regs., tit. 5, § 4670, subd. (a).)

Not only are we satisfied the administrative remedy is adequate, we also are satisfied the administrative remedy is intended to be exclusive. First, the regulations specifically state that allegations of failure by a community mental health department to provide services "shall be resolved" pursuant to the administrative procedure. (Cal. Code Regs., tit. 2, § 60560.)

Further, the Superintendent of Public Instruction is specifically charged with the duty to "ensure that this chapter [concerning interagency services to handicapped children] is carried out through monitoring and supervision." (Gov. Code, § 7570.) Permitting local educational agencies to proceed directly to court to enforce IDEA conflicts with this supervisory authority.

Finally, the complex web of funding for programs such as this requires that the superintendent retain the greatest possible discretion in resolving interagency disputes, so as to leave open the possibility (to take a purely hypothetical example) that the superintendent would elect to direct funding to the local educational agency instead of funding an uncooperative community mental health department: IDEA does not *require* an educational agency providing mental health services to seek reimbursement, but merely permits it to do so. (See 20 U.S.C. § 1412(a)(12)(B).)

As a result of these considerations of exclusivity, we conclude there is no cause of action vested in a local administrative agency to seek *judicial* enforcement of another agency's obligations under IDEA. The statutory and regulatory scheme vests that cause of action in the Superintendent of Public Instruction, and a local agency's exclusive remedy is through the administrative process established by the uniform complaint procedures.

Appellants contend that certain of their causes of action simply are not subject to the requirement of exhaustion of remedies. For example, they contend in their opening brief that "[n]o exhaustion is required" for declaratory relief. This claim is made without further explanation or citation of authorities. It is also wrong: "The declaratory relief provisions do not independently empower the courts to stop or interfere with administrative proceedings by declaratory decree." (*Walker v. Munro* (1960) 178 Cal.App.2d 67, 72 [2 Cal.Rptr. 737].)

In their reply brief, appellants recast this argument in terms of the futility exception to the exhaustion requirement, citing *Venice Town Council, Inc. v. City of Los Angeles* (1996) 47 Cal.App.4th 1547 [55 Cal.Rptr.2d 465]. In that case, as a matter of policy interpretation, the city made a particular determination each time the same zoning issue was presented to it. Plaintiffs contended the policy conflicted with state law. In seeking dismissal of

plaintiff's action, the city contended administrative appeals from individual zoning decisions were sufficient to provide relief to plaintiffs. The court held exhaustion was not required because the administrative hearings, while potentially correcting individual errors, could not force the city to change its underlying policy. (*Id.* at p. 1568.)

■ In the present case, the administrative process is fully capable of providing complete relief to appellants. Equally important, the determination of the type of relief to be awarded is specifically entrusted to the discretion of the Superintendent of Public Instruction by the very laws that establish appellants as entities. In these circumstances, appellants are not entitled to bypass the superintendent's exercise of discretion by presenting the issues directly to a court.

Appellants also contend their causes of action under the Unruh Civil Rights Act, Civil Code section 51 et seq., and the Federal Civil Rights Act, 42 United States Code section 1983, do not require exhaustion.[5] IDEA provides that a complainant may file an action under the Constitution and federal laws which protect the rights of children with disabilities, "except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter." (20 U.S.C. § 1415(*l*).) Respondents rely on cases from the Ninth Circuit Court of Appeals for the proposition that exhaustion is required prior to any court action, regardless of the nature of the cause of action, if it is based on injuries that are also remediable under IDEA administrative procedures. (See *Robb v. Bethel School District # 403* (9th Cir. 2002) 308 F.3d 1047, 1050.)

While the parties disagree about the meaning of the federal cases, in a real sense typical administrative exhaustion cases do not speak to the unique issues in the present case. The considerations that arise in requiring an *individual* to pursue an administrative remedy within the structure of the governmental entity that has deprived him or her of rights are somewhat different from the considerations when one subordinate government entity is required to invoke the administrative adjudicatory powers of a superior administrative body to resolve a dispute between the complainant and another subordinate entity.

---

[5] We seriously doubt that appellants are "aggrieved persons" under the Unruh Civil Rights Act and whether they have civil rights of which they can be illegally deprived under 42 United States Code section 1983. Appellants are, after all, creatures of statute with only the rights, duties, and powers conferred upon them by statute. These issues of standing and substantive rights are not directly presented in this case, but the issues are related to appellants' subordinate role in a complex statutory scheme with detailed administrative remedies and the superintendent's statutory discretion to craft appropriate remedies in enforcing IDEA obligations.

The first important consideration is that a governmental entity has no vested, individual rights in the administration of a particular program. (See *County of Westchester v. New York* (2d Cir. 2002) 286 F.3d 150 [agencies have no private right of action under IDEA].) Appellants are purely creatures of statute, and it is clear the Legislature could reassign administration of IDEA programs to a different entity if it chose to do so. If the Legislature were to so choose, appellants would not be entitled to any sort of due process hearing or appeal to contest the action. (Cf. *South Carolina v. Katzenbach* (1966) 383 U.S. 301, 323 [15 L.Ed.2d 769, 86 S.Ct. 803] [state is not a "person" within meaning of Fifth Amendment due process protections].)

Second, and of greater importance, the statutory scheme clearly intends to invest the Superintendent of Public Instruction with the discretion to determine how and whether IDEA will be enforced against a community mental health department. As noted above, the federal statute, in essence, requires appellants to provide mental health services if respondents do not. While appellants are permitted to seek reimbursement from respondents, that permission is limited, by the express terms of the statute, to an administrative remedy. (See 20 U.S.C. § 1412(a)(12)(B).) From the standpoint of IDEA, appellants have no *right* to reimbursement from respondents; they have only the right to seek reimbursement through the administrative process. (We are not presented in this case with the unfunded-state-mandate issue if the Superintendent of Public Instruction exercised discretion to leave the costs of mental health services with appellants.)

As a result of these two factors, we conclude appellants have no rights enforceable against respondents through other causes of action, at least until the administrative process confers upon them such a right in the discretion of the Superintendent of Public Instruction.

## DISPOSITION

The judgment is affirmed. Respondents are awarded costs on appeal.

Cornell, J., and Dawson, J., concurred.