Filed 7/27/23  Orange County Council of Governments v. Velasquez CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| ORANGE COUNTY COUNCIL OF GOVERNMENTS, et al., | B317856 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 21STCP01970) |
| v. | |
| GUSTAVO VELASQUEZ, et al., | |
| Defendants and Respondents, | |
| SOUTHERN CALIFORNIA ASSOCIATION OF GOVERNMENTS, | |
| Real Party in Interest. | |

Appeal from a judgment of the Superior Court of Los Angeles County, Mary H. Strobel, Judge.  Affirmed.

Aleshire & Wynder, Fred Galante, June S. Ailin, Pam K. Lee, and Alison S. Flowers, for Plaintiffs and Appellants.

Rob Bonta, Attorney General, Daniel A. Olivas, Senior Assistant Attorney General, and Jamee Jordan Patterson and Erica B. Lee, Deputy Attorneys General, for Defendants and Respondents.

Meyers Nave, Deborah J. Fox and Margaret W. Rosequist, for Real Party in Interest.

Public Law Center, Richard Walker and Jonathan Bremen; Public Interest Law Project, Craig Castellanet, Michael Rawson, and Ugochi Anaebere-Nicholson; Community Legal Aid SoCal, Sarah Reisman and Erica Embree, as Amici Curiae on behalf of Respondents.

---

Plaintiffs Orange County Council of Governments (OCCOG), the City of Redondo Beach, City of Lakewood, City of Torrance, City of Cerritos, City of Downey, and City of Whittier appeal from a judgment dismissing their first amended petition for writ of mandate (Code Civ. Proc., § 1085) seeking to direct Gustavo Velasquez, Director of Department of Housing and Community Development, and the California Department of Housing and Community Development (collectively, the Department of Housing) to set aside its housing needs determination for the region overseen by real party in interest Southern California Association of Governments (SC Association of Governments). The Fourth District Court of Appeal held in

2

*City of Irvine v. Southern California Assn. of Governments* (2009) 175 Cal.App.4th 506 (*City of Irvine*), that a local government's allocation of the regional housing needs assessment (RHNA) made under Government Code section 65584 et seq.[1] is precluded from judicial review. We conclude *City of Irvine*'s reasoning applies to plaintiffs' contentions concerning the Department of Housing's RHNA determination such that plaintiffs' action is barred. Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed the operative first amended petition for writ of mandate seeking an order directing the Department of Housing to vacate its RHNA determination for the SC Association of Governments region and conduct a new assessment. As alleged in the first amended petition, of which we assume the truth of the properly pleaded factual allegations (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20), the Department of Housing is "tasked with . . . determining the regional housing needs assessment for each regional planning body (known as a "council of governments") in the State, and reviewing and approving housing elements of local governments to meet the housing needs of their communities." Pursuant to section 65300, each city and county in California is required to adopt a general plan, which "is a comprehensive, long-term plan for

[1]	All further statutory references are to the Government Code, unless otherwise noted.

the development of a city, including any land outside its boundaries that the city believes is related to its planning." A housing element is a required component of the general plan.

The Department of Housing oversees the RHNA process. At least two years before scheduled housing element updates within a region are set to occur, the Department of Housing will assign a region its share of the state's housing needs in consultation with the council of governments located within that region. SC Association of Governments is the regional council of governments for several Southern California counties, including Imperial County, Los Angeles County, Orange County, Riverside County, San Bernardino County, and Ventura County, and the incorporated cities within each of these counties. SC Association of Governments "serves as a planning organization on behalf of its members, which include six counties and 191 cities, to develop . . . long-range regional housing needs allocations."

Plaintiffs City of Redondo Beach, City of Lakewood, City of Torrance, City of Cerritos, City of Downey, and City of Whittier are members of SC Association of Governments and subject to the RHNA determination issued by the Department of Housing and allocated by SC Association of Governments. Plaintiff OCCOG "is a joint powers public agency organized and existing pursuant to the Joint Exercise

4

of Powers Act . . . ."[2]  OCCOG "serves as a sub-regional planning organization on behalf of its thirty-four members," and "[i]n conjunction with [SC Association of Governments], OCCOG assists in the development and analysis of planning documents prepared as part of the allocation of its members' regional housing needs assessment under statewide land use laws."

Plaintiffs allege that "in 2019, [SC Association of Governments] and [the Department of Housing] began developing the RHNA determination for the [relevant Southern California] region for the 2021-2029 planning period (also known as the 6th cycle)."  At the same time, SC Association of Governments began developing its methodology for allocating the projected regional RHNA determination among the local governments within its region.  On August 22, 2019, the Department of Housing provided a letter to SC Association of Governments informing it of the Department's draft determination for the region.  The Department of Housing assigned a total of 1,344,740 dwelling units as the RHNA determination for the region to be allocated among the local governments.

On September 18, 2019, SC Association of Governments submitted a formal objection to the Department of Housing's draft determination of regional

---

[2]     Despite its name, plaintiff OCCOG is not a council of governments as defined by the RHNA statutes.  SC Association of Governments is the council of governments for the relevant region in this action.

5

housing needs.  The Department of Housing did not alter its RHNA approach based on SC Association of Governments' objection, other than using more recent "cost-burden" rates for households.[3]  On October 15, 2019, the Department of Housing provided SC Association of Governments with its final RHNA determination for the region.  Based on the more recent data, the Department of Housing determined the housing need for the region was slightly less than previously thought, 1,341,827 total dwelling units.

OCCOG participated in and contributed to SC Association of Governments' development of its RHNA methodology throughout 2019.  OCCOG sent a letter to SC Association of Governments regarding its RHNA methodology and regional determination.  OCCOG asserted in the letter that the Department of Housing failed to comply with the RHNA statutes when calculating the regional determination.  SC Association of Governments subsequently submitted its draft RHNA methodology for the 6th cycle for the Department of Housing's review and reiterated its earlier objection regarding the Department of Housing's RHNA determination of the regional housing need.  The Department of Housing then sent SC Association of Governments a letter advising that it completed its review of SC Association of Governments' RHNA methodology and

---

[3]     The first amended petition defines cost-burdened households as the share of households by income level paying more than 30% of household income on housing costs.

found that it furthered the statutory objectives of RHNA statutes.

After obtaining approval from the Department of Housing for its RHNA methodology, on or about September 3, 2020, SC Association of Governments notified the local governments within the region of each one's share of the RHNA allocation. SC Association of Governments received 52 appeals from local governments in its region; all but two were denied.

Plaintiffs then filed the first amended petition seeking a "writ of mandate directing [the Department of Housing] to vacate and set aside" its RHNA determination for SC Association of Governments' region, change the input of information utilized in calculating its RHNA determination, and conduct a new assessment for the region. Plaintiffs contend that "[t]he 1,341,827 total dwelling units represents more than twice the number of projected housing units needed by the end of the 6th Cycle in 2029." Plaintiffs argue that this is because the Department of Housing's RHNA determination is based on "[The Department of Housing's] use of the wrong population forecast, comparable region, and vacancy rates, as well as new methodology that includes overcrowding and cost burdening factors that [the Department of Housing] did not previously consider in its typical methodology for prior housing cycles."

The Department of Housing and SC Association of Governments each filed demurrers to the first amended petition arguing that the trial court lacked jurisdiction over

the RHNA challenges based on the ruling in *City of Irvine, supra,* 175 Cal.App.4th 506. The trial court agreed it lacked jurisdiction over the writ claim as pleaded in the first amended petition, and after hearing argument, sustained the demurrers without leave to amend. The court entered judgment dismissing the action, and plaintiffs timely filed this appeal.[4]

## DISCUSSION

### A.    Standard of Review

"Because the function of a demurrer is to test the sufficiency of a pleading as a matter of law, we apply the de novo standard of review in an appeal following the sustaining of a demurrer without leave to amend." (*California Logistics, Inc. v. State of California* (2008) 161 Cal.App.4th 242, 247.) "'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without

---

[4]    We have granted an application of the Kennedy Commission, Community Legal Aid SoCal, and Public Interest Law Project to file an amicus curiae brief in support of the Department of Housing. We have considered the brief and plaintiffs' response to that brief.

8

leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

"We review the correctness of the trial court's action in sustaining the demurrer, not the court's statement of reasons for its action." (*Martis Camp Community Assn. v. County of Placer* (2020) 53 Cal.App.5th 569, 610.) Accordingly, "[w]e affirm the judgment if it is correct for any reason, regardless of the trial court's stated reasons." (*MKB Management, Inc. v. Melikian* (2010) 184 Cal.App.4th 796, 802.)

## B. Statutory Overview

"Under the Planning and Zoning Law (§ 65000 et seq.), local governments must prepare and adopt general plans for their 'long-term . . . physical development . . . .' (§ 65300.) One of the essential components of a general plan is a housing element. (§ 65302, subd. (c).)" (*City of Irvine, supra*, 175 Cal.App.4th at p. 512.)

The Legislature enacted regional housing needs laws to address California's shortage of affordable housing and has declared "[t]he availability of housing is of vital statewide importance, and the early attainment of decent housing and a suitable living environment for every Californian . . . is a

9

priority of the highest order."  (§ 65580, subd. (a); see also *San Franciscans for Livable Neighborhoods v. City and County of San Francisco* (2018) 26 Cal.App.5th 596, 610 ["The Legislature enacted the regional housing needs assessment (RHNA) procedure . . . to address the state's shortage of affordable housing"].)  The early attainment of this goal, together with the added goal of providing "housing affordable to low- and moderate-income households," requires the cooperative participation of government at all levels.  (§ 65580, subds. (b) & (c).)

The Legislature's intent is, among other things, "[t]o assure that counties and cities recognize their responsibilities in contributing to the attainment of the state housing goal," "[t]o assure that counties and cities will prepare and implement housing elements which . . . will move toward attainment of the state housing goal," and "[t]o ensure that each local government cooperates with other local governments in order to address regional housing needs."  (§ 65581, subds. (a), (b), & (d).)

"A municipality's housing element 'consist[s] of an identification and analysis of existing and projected housing needs and a statement of goals, policies, quantified objectives, financial resources, and scheduled programs for the preservation, improvement, and development of housing.' (§ 65583.)  It must contain '[a]n assessment of housing needs and an inventory of resources and constraints relevant to the meeting of these needs.' (§ 65583, subd. (a).)"  (*City of Irvine*, *supra*, 175 Cal.App.4th at p. 513.)  The

assessment and inventory shall include "'a quantification of the locality's existing and projected housing needs for all income levels' that 'include[s] the locality's share of the regional housing need in accordance with [s]ection 65584' (§ 65583, subd. (a)(1)) . . . ." (*Ibid.*)

Section 65584 requires the Department of Housing, "in consultation with each council of governments, [to] determine each region's existing and projected housing need pursuant to Section 65584.01 at least two years prior to the scheduled revision required pursuant to Section 65588." "This determination must be based on the 'objectives' of equitably increasing the housing supply, type, and affordability, encouraging conservation of agricultural and environmental resources through the promotion of infill development, improving the relationship between housing and jobs in the region, and using the allocation of housing needs by income category to eliminate disparities between communities in the region. (§ 65584, subd. (d).)" (*City of Irvine, supra*, 175 Cal.App.4th at p. 513.)

"At least 26 months prior to the scheduled [housing element] revision . . . and prior to developing the existing and projected housing need for a region, [the Department of Housing] shall meet and consult with the council of governments regarding the assumptions and methodology to be used by the department to determine the region's housing needs." (§ 65584.01, subd. (b)(1).) After this consultation, the Department of Housing must "make a determination of the region's existing and projected housing need based upon

11

the assumptions and methodology determined pursuant to subdivision (b)," which must "reflect the achievement of a feasible balance between jobs and housing within the region using the regional employment projections in the applicable regional transportation plan." (§ 65584.01, subd. (c)(1).) "Within 30 days following notice of the determination from [the Department of Housing], the council of governments may file an objection to [the Department of Housing's] determination of the region's existing and projected housing need with [the Department of Housing]." (*Ibid.*)

The objection shall be based on either of the following:

"(A) The department failed to base its determination on the population projection for the region established pursuant to subdivision (a), and shall identify the population projection which the council of governments believes should instead be used for the determination and explain the basis for its rationale.

(B) The regional housing need determined by the department is not a reasonable application of the methodology and assumptions determined pursuant to subdivision (b). The objection shall include a proposed alternative determination of its regional housing need based upon the determinations made in subdivision (b), including analysis of why the proposed alternative would be

12

a more reasonable application of the methodology and assumptions determined pursuant to subdivision (b)."  (§ 65584.01, subd. (c)(2)(A)(B).)

Within 45 days of receiving an objection filed by a council of governments, the Department of Housing "shall consider the objection and make a final written determination of the region's existing and projected housing need that includes an explanation of the information upon which the determination was made." (§ 65584.01, subd. (c)(3).)  This regional housing needs determination by the Department of Housing is what plaintiffs assert they are challenging in their first amended petition.

A council of governments shall then "develop, in consultation with [the Department of Housing], a proposed methodology for distributing the existing and projected regional housing need to cities, counties, and cities and counties within the region . . . ."  (§ 65584.04, subd. (a).)  The council of governments must "survey each of its member jurisdictions to request . . . information regarding [a list of] factors . . . that will allow the development of a [distribution] methodology."  (§ 65584.04, subd. (b)(1).)  "Public participation and access shall be required in the development of the methodology and in the process of drafting and adoption of the allocation of the regional housing needs. . . ."  (§ 65584.04, subd. (d).)  After completion of the methodology development process, the council of

13

governments "shall provide notice of the adoption of the methodology to the jurisdictions within the region, . . . and to [the Department of Housing]." (§ 65584.04, subd. (k).)

"After adopting a methodology, the next step involve[s] the preparation and revision of a draft allocation plan for the RHNA. It requires a 'council of governments . . . [to] distribute a draft allocation of regional housing needs to each local government in the region or subregion' '[a]t least one and one-half years prior to the scheduled [housing element] revision . . . .' (§ 65584.05, subd. (a).) 'The draft allocation shall include the underlying data and methodology on which the allocation is based.'" (*City of Irvine, supra*, 175 Cal.App.4th at p. 515.)

Section 65584.05 authorizes local governments to file an appeal of the RHNA draft allocation and outlines the procedures for doing so. The council of governments "shall adjust allocations to local governments based upon the results of the appeals process. . . . The total distribution of housing need shall not equal less than the regional housing need . . . ." (§ 65584.05, subd. (f).) "The final determination on an appeal may require the council of governments or delegate subregion, as applicable, to adjust the share of the regional housing need allocated to one or more local governments that are not the subject of an appeal." (§ 65584.05, subd. (e)(1).) "Within 45 days after the issuance of the proposed final allocation plan by the council of governments and each delegate subregion, as applicable, the council of governments shall hold a public hearing to adopt a

14

final allocation plan. . . . The council of governments shall submit its final allocation plan to [the Department of Housing] within three days of adoption.  Within 30 days after the [Department of Housing's] receipt of the final allocation plan adopted by the council of governments, [the Department of Housing] shall determine if the final allocation plan is consistent with the existing and projected housing need for the region . . . ."  (§ 65584.05, subd. (g).)

## C.    City of Irvine

In *City of Irvine, supra*, 175 Cal.App.4th 506, SC Association of Governments issued a draft RHNA allocation that allotted 35,000 residential units to the City of Irvine (Irvine).  (*Id.* at p. 511.)  Irvine filed an appeal of the proposed allocation with SC Association of Governments' appeals board, and it issued a written decision denying the appeal.  (*Ibid.*)  After revising the allocations of certain other jurisdictions, SC Association of Governments issued a proposed final RHNA allocation that increased Irvine's allocation by more than 300 units.  (*Ibid.*)  Over Irvine's opposition, SC Association of Governments approved the final allocation plan without change.  (*Ibid.*)  Irvine then filed a petition seeking to "'[v]acate and set aside'" the draft allocation, the appeals board's denial of its appeal, and the regional council's final allocation plan, plus a "'[r]ecalculat[ion of plaintiff's] allocation of new housing units . . . .'"  (*City of Irvine, supra*, 175 Cal.App.4th at pp. 511–512.)  SC Association of Governments filed a

demurrer, arguing that the trial court lacked "'jurisdiction of the subject of the petition'" for several reasons, including that "the Legislature's 2004 amendments to the RHNA statutes 'specifically removed the judicial writ remedy from the . . . statute.'" (*Ibid.*) The trial court sustained the demurrer without leave to amend and entered judgment dismissing the action. (*Ibid.*) Irvine appealed. (*Ibid.*)

The Court of Appeal began its analysis of judicial jurisdiction by acknowledging that Article VI, section 10 of the California Constitution gives "'[t]he Supreme Court, courts of appeal, superior courts, and their judges . . . original jurisdiction in proceedings for extraordinary relief in the nature of mandamus, certiorari, and prohibition.'" (*City of Irvine, supra*, 175 Cal.App.4th at p. 516.) "'[T]he Legislature cannot alter the jurisdiction over extraordinary writs which is prescribed by the Constitution.'" (*Ibid.*, quoting *Modern Barber Col. v. Cal. Emp. Stab. Com.* (1948) 31 Cal.2d 720, 729.) However, "the Legislature may indirectly regulate the jurisdiction of courts by abolishing or limiting substantial rights [citation] and prescribing the procedure by which the courts exercise their jurisdiction [Citation]." (*City of Irvine, supra*, 175 Cal.App.4th at p. 516.) The Legislature's intent to defeat the exercise of the court's jurisdiction must be expressly provided or clearly intended. (*Id.* at p. 516–517.)

The Court of Appeal then found that "the nature and scope of a general plan's housing element and the length and intricacy of the process created to determine a municipality's

RHNA allocation reflects a clear intent on the part of the Legislature to render this process immune from judicial intervention." (*City of Irvine, supra*, 175 Cal.App.4th at p. 517.) The court summarized the "intricate steps" of the RHNA allocation process as follows:

> "First, it requires the setting of statewide and regional housing goals and the creation of a methodology to quantify the goals and distribute the projected additional housing needs throughout the state. This step mandates consultation between [the Department of Housing] and the respective councils of government. Second, each respective council of government must create a methodology for distributing its region's housing needs to the local governments under its jurisdiction. This requires not only consultation between the regional council of government and local governments, but also public hearings to obtain input from a wide variety of concerned parties. Third, the council of government's proposed allocation of housing units to local governments is subject to review and reassessment at the request of individual governments. Ultimately, each council of government's final RHNA allocation is subject to further review and revision by [the Department of Housing] to ensure it is consistent with the

17

region's housing needs."  (*City of Irvine, supra,* 175 Cal.App.4th at p. 517.)

The Court of Appeal concluded that "the administrative procedure created to determine a municipality's RHNA allocation precludes judicial review of that decision."  (*City of Irvine, supra*, 175 Cal.App.4th at p. 512.)

Although Irvine argued that it was seeking only to correct its own RHNA allocation, the court noted that "[u]nder the RHNA procedure, when a local government successfully obtains a downward revision of its RHNA allocation, the council of governments must then reallocate the excess units to other jurisdictions within the region." (*City of Irvine, supra*, 175 Cal.App.4th at p. 518.) Consequently, allowing judicial review "would require the joining of all affected local jurisdictions in the lawsuit, thereby precluding each affected municipality's completion of its housing element revision."  (*Ibid.*)

Moreover, the court cited *Tri–County Special Educ. Local Plan Area v. County of Tuolumne* (2004) 123 Cal.App.4th 563, 578, for the proposition that "'a governmental entity has no vested, individual rights in the administration of a particular program,'" and determined that "the structure and scope of the RHNA statutes reflect a clear intent to vest in [the Department of Housing] and the respective council of governments, along with the extensive input from local governments and the public, the authority to set the RHNA allocation for each local government."

(*City of Irvine, supra*, 175 Cal.App.4th at p. 519.) The court rejected Irvine's contentions that precluding judicial review would be unconstitutional. (*Id.* at p. 520.) The court reasoned that the RHNA process was primarily legislative and required the involvement of many different entities, none of which had complete control of the scheme. (*Ibid.*) It noted that even in cases where investigative, prosecutorial, and adjudicatory functions were combined within a single administrative agency, due process could be provided. (*Ibid.*) Further, Irvine was not without an adequate alternative remedy for having to account for 100 percent of the housing allocation assigned to it, as there were statutory exceptions that it could utilize if appropriate. (*Id.* at pp. 520–521.)

Lastly, the *City of Irvine* court stated that the "2004 amendments to the RHNA statutes" supported its decision. (*City of Irvine, supra*, 175 Cal.App.4th at p. 521.) "Before those amendments, former section 65584, subdivision (c)(4) declared, 'The determination of the council of governments [concerning a city or county's share of the state housing need] . . . shall be subject to judicial review pursuant to Section 1094.5 of the Code of Civil Procedure.' This provision was eliminated in 2004." (*Ibid.*) The court reasoned that "the 2004 repeal of the judicial remedy reinforces our conclusion the Legislature clearly intended to eliminate judicial remedies for challenging a municipality's RHNA allocation." (*Id.* at p. 522.) "Given the RHNA statutes' nature, their allowance for public input, and their lengthy and extensive administrative procedure, it is clear

19

the Legislature intended to eliminate resort to traditional judicial remedies to challenge a local government's regional housing needs allocation so as to avoid the disruption of local planning that would result from interference through the litigation process." (*Ibid*.)

## D.    Analysis

### 1.    *City of Irvine Controls*

Plaintiffs argue that *City of Irvine* is distinguishable from their case because they are challenging the preliminary determination of regional housing needs by the Department of Housing, not the later allocation of housing by SC Association of Governments. According to Plaintiffs, *City of Irvine* held only that judicial review was precluded as to the allocation of the regional housing need, not a determination upon which that allocation is based. We disagree.

In *City of Irvine*, "the court broadly held that 'the statutes governing the RHNA allocation procedure . . . reflect a clear intent to preclude judicial intervention *in the process*' . . . ." (*City of Coronado v. San Diego Association of Governments* (2022) 80 Cal.App.5th 21, 41 (*City of Coronado*), citing *City of Irvine, supra*, 175 Cal.App.4th at p. 522.) In other words, *City of Irvine's* reasoning was not limited solely to analyzing SC Association of Governments' allocation of the regional housing need to Irvine. *City of Irvine* considered the greater RHNA process, and the Department of Housing's role and vested authority in it, concluding that judicial review was precluded.

The *City of Irvine* court's reasoning applies with equal force to plaintiffs' claims here. The Legislature enacted the RHNA statutes to address California's shortage of affordable housing promptly. The intricate and years long administrative process that leads to the allocation of regional housing needs "reflects a clear intent on the part of the Legislature" to restrict judicial intervention. (*City of Irvine, supra*, 175 Cal.App.4th at p. 517.) The process involves the setting of statewide housing goals and interaction among the Department of Housing, a regional council of governments, local governments, and concerned parties. It provides opportunities for extensive input and consideration of objections, and no "single entity has complete control of the scheme." (*Id.* at p. 520.) To the extent that the RHNA statutes authorize the Department of Housing to act in multiple capacities, a single administrative agency may legally combine investigative, prosecutorial, and adjudicative functions. (*Ibid.*, citing *Morongo Band of Mission Indians v. State Water Resources Control Bd.* (2009) 45 Cal.4th 731, 737.)

Allowing judicial review of the Department of Housing's RHNA determination "would interfere with the administrative process and be both unmanageable and cause unreasonable delay." (See *City of Coronado, supra,* 80 Cal.App.5th at p. 44.) Because plaintiffs challenge the RHNA determination for the entire SC Association of Governments region, their action "would require the joining of all affected local jurisdictions in the lawsuit," preventing

21

all the municipalities within the region from completing their housing element revisions.  (See *City of Irvine*, *supra*, 175 Cal.App.4th at p. 518.)  Plaintiffs' case would "'essentially bottleneck the process and create gridlock while a particular city's case winds through the courts.'"[5]  (*Ibid.*)

*City of Coronado*, *supra*, 80 Cal.App.5th 21, supports this conclusion.  In *City of Coronado*, which was decided after the trial court entered its judgment in this matter, the Cities of Coronado, Imperial Beach, Lemon Grove, and Solana Beach (collectively "the Cities") filed a combined petition for writ of administrate mandate and complaint for injunctive and declaratory relief against the San Diego Association of Governments, which is the council of governments for the San Diego region, and its board of directors (collectively, SD Association of Governments).  (*Id.* at p. 27, fn. 2.)  The Cities alleged that SD Association of Governments abused its discretion and failed to provide a fair and impartial hearing in ruling on the Cities' administrative appeals of the draft RHNA allocations.  (*Id.* at p. 28.)  The Cities sought an order rescinding SD Association of Governments' denial of the Cities' appeals and the final RHNA allocation.  (*Id.* at p. 30.)  After SD Association of Governments demurred to the petition, the trial court ruled that it lacked jurisdiction and sustained the

---

[5]     As alleged in the first amended petition, the Department of Housing provided its final RHNA determination to SC Association of Governments for its region on October 15, 2019.  The relief plaintiffs seek, therefore, would restart a process that was completed nearly four years ago.

22

demurrer without leave to amend.  (*Id.* at p. 34.)  The Cities appealed, arguing their action was not barred by *City of Irvine* because that case involved a substantive challenge, while their action involved a procedural challenge.  (*Id.* at pp. 27–28, 41.)

However, the *City of Coronado* court recognized that *City of Irvine* broadly held that the statutes governing the RHNA allocation procedure reflect a clear intent to preclude judicial intervention, and there was no suggestion that procedural claims were outside the scope of its clear holding.  (*City of Coronado*, *supra*, 80 Cal.App.5th at p. 41.)  Even if procedural claims were not considered in *City of Irvine*, the court's rationale for precluding judicial review would still apply and bar the Cities' action.  (*City of Coronado*, *supra*, 80 Cal.App.5th at p. 42.)  The ultimate relief the Cities requested was to recalculate the RHNA allocation, and "the *City of Irvine* court has already concluded that a judicial challenge that seeks an alternative RHNA allocation is barred."  (*Id.* at p. 42, fn. omitted.)  As such, all the rationales identified in *City of Irvine* supported the conclusion that the trial court lacked jurisdiction to adjudicate the Cities' claims.  (*Id.* at p. 44.)

Similarly here, the first amended petition asks the trial court to vacate and set aside the Department of Housing's RHNA determination for the SC Association of Governments region, change the input of information used in the Department of Housing's RHNA determination, and conduct a new assessment for the region.  This relief would

23

ultimately result in the RHNA allocations for the entire region being changed, and "the *City of Irvine* court has already concluded that a judicial challenge that seeks an *alternative* RHNA allocation is barred." (*City of Coronado, supra*, 80 Cal.App.5th at p. 42, italics in original.)

Concluding that judicial review of the Department of Housing's RHNA determination is appropriate here would essentially render *City of Irvine's* and *City of Coronado's* holdings meaningless, as a local government could challenge the entire RHNA allocation process by challenging the Department of Housing's initial RHNA determination. We will not construe *City of Irvine* "in a manner that is inconsistent with its reasoning and would evade the legislatively imposed limits on judicial review that the court sought to enforce." (*City of Coronado, supra*, 80 Cal.App.5th at p. 44.) This would cause delay in the entire region and preclude each local government from completing its housing element.

### 2. *The Legislature's Intent to Remove Judicial Review*

#### a. *2004 Amendments Indicate Judicial Review is Precluded*

Plaintiffs argue that the 2004 amendments to the RHNA statutes indicate that there was no legislative intent to eliminate judicial review of the Department of Housing's determination of regional housing needs. According to plaintiffs, the deletion of judicial review from the RHNA

24

statutes applies to a council of governments' allocation of the regional housing need, not the Department of Housing's RHNA determination.  Plaintiffs' arguments are unpersuasive.

Before the amendments to the RHNA statutes, "former section 65584, subdivision (c)(4) declared, 'The determination of the council of governments [concerning a city or county's share of the state housing need] . . . shall be subject to judicial review pursuant to Section 1094.5 of the Code of Civil Procedure.'  This provision was eliminated in 2004." (*City of Irvine, supra,* 175 Cal.App.4th at p. 521.) "We must presume the Legislature's deletion of the express provision allowing review by administrative mandamus reflects its intent to preclude that judicial remedy to challenge a municipality's RHNA allocation under the revised law." (*Id.* at p. 522; see also *City of Coronado, supra,* 80 Cal.App.5th at p. 43 ["we see nothing in either the Legislative amendment or in the *City of Irvine* court's discussion of that amendment that limits its impact to . . . 'substantive' challenges to RHNA allocations"].)

As the Department of Housing asserts, the Legislature deleted the sole provision that authorized judicial review of the RHNA allocation process.  It would not follow that the deletion of the only provision providing for judicial review meant that the Legislature intended to provide judicial review for all other preliminary steps in the RHNA process, including the Department of Housing's RHNA determination.  If allowing judicial review of a council of

25

governments' allocation of regional housing needs would "effectively nullify" the RHNA statutory process, so too would allowing judicial review of every step of the process leading up to the allocation. (*City of Irvine, supra*, 175 Cal.App.4th at p. 518.)

Moreover, the Legislature "is deemed to be aware of existing laws and judicial constructions in effect at the time legislation is enacted." (*People v. Weidert* (1985) 39 Cal.3d 836, 844.) If the Legislature desired to provide for judicial review of the Department of Housing's determination of regional housing needs following the 2004 amendments, it knew how to craft such a provision because it had previously provided for judicial review in former section 65584, subdivision (c)(4). (*Bernard v. Foley* (2006) 39 Cal.4th 794, 811.) The Legislature's decision to omit judicial review from any subsequent amendments is another confirmation of its clear intent to restrict judicial review of the RHNA allocation process.

A contrary finding would not serve the Legislature's intent or purpose. The Legislature declared housing availability to be of "vital statewide importance" and the "*early* attainment of decent housing and a suitable living environment . . . a priority of the highest order." (§ 65580, subd. (a), italics added.) Allowing any of the many local governments in the SC Association of Governments region to challenge the Department of Housing's RHNA determination would be contrary to the purpose of the RHNA statutes and render the 2004 amendments meaningless.

(*Manufacturers Life Ins. Co. v. Superior Court* (1995) 10 Cal.4th 257, 274 ["Well-established canons of statutory construction preclude a construction which renders a part of a statute meaningless or inoperative"].)

> b.     *Cases Involving Other Statutory Schemes are Inapposite*

In support of their argument that there is no clear legislative intent to remove judicial review of Department of Housing's RHNA determination from the courts, plaintiffs cite to *International Assn. of Fire Fighters, Local 188, AFL-CIO v. Public Employment Relations Bd.* (2011) 51 Cal.4th 259 (*International Fire Fighters*) and *Sims v. Department of Corrections & Rehabilitation* (2013) 216 Cal.App.4th 1059 (*Sims*).  These cases, however, addressed different statutory schemes, not whether judicial review of the RHNA allocation process is precluded under the present circumstances.

In *International Fire Fighters*, the California Supreme Court considered whether a union could obtain judicial review of a Public Employment Relations Board (Board) decision refusing to issue a complaint against a city for failing to meet and confer with the union about layoffs. (*International Fire Fighters*, *supra*, 51 Cal.4th at pp. 264, 267-271.)  The union alleged that the city's failure to meet and confer violated California's Meyers-Milias-Brown Act. Section 3509.5 of this Act generally provides for judicial review of a final Board decision in an unfair labor practice case, "except a decision of the [B]oard not to issue a

27

complaint in such a case . . . ." The Supreme Court held judicial review of the Board's decision was appropriate because section 3509.5 did not expressly provide or clearly indicate that judicial review was prohibited in all circumstances under the Meyers-Milias-Brown Act. (*International Fire Fighters*, *supra*, at pp. 268, 271.) In particular, the Meyers-Milias-Brown Act did not expressly bar traditional mandamus review under three limited circumstances in which such review was available under the National Labor Relations Act, upon which the Meyers-Milias-Brown Act was modeled. The court emphasized, "We stress, however, that it remains true that a refusal by PERB to issue a complaint under the MMBA is not subject to judicial review for ordinary error, including insufficiency of the evidence to support the agency's factual findings and misapplication of the law to the facts, or for abuse of discretion. Also, to avoid undue interference with the discretion that the Legislature has intended PERB to exercise, courts must narrowly construe and cautiously apply the exceptions we here recognize."[6] (*International Assn. of Fire Fighters*, *supra*, at 271.)

---

[6] While plaintiffs argue in their briefs that the Department of Housing's actions exceeded its authority or were based on an erroneous statutory construction, the first amended petition alleges only that the Department of Housing should have used different data or a different approach for its methodology than what it chose. This would amount to a claimed error in application of the law to the facts or abuse of discretion, which would not be reviewable under the narrow exceptions identified in *International Fire Fighters* were they applicable here.

28

In *Sims*, the issue was whether regulations promulgated by the California Department of Corrections and Rehabilitation (Department of Corrections) regarding the way the death penalty is carried out substantially complied with the California Administrative Procedure Act. (*Sims*, *supra*, 216 Cal.App.4th at p. 1063.) In part, the Department of Corrections argued that the trial court lacked authority to determine whether the subject proposed regulations complied with the "necessity" and "clarity" requirements of the Administrative Procedure Act because the issue was committed solely to the Office of Administrative Law. (*Id.* at p. 1075.) However, the court found the Legislature unambiguously indicated the opposite intent. (*Id.* at 1077.) Section 11350, subdivision (a), under which the regulations were challenged, provides that "[a]ny interested person may obtain a judicial declaration as to the validity of any regulation . . . by bringing an action for declaratory relief in the superior court in accordance with the Code of Civil Procedure." Thus, "[t]he text of the [Administrative Procedure Act] . . . makes clear that initial review of a proposed regulation by the [Office of Administrative Law] is not exclusive but subordinate to judicial review." (*Sims*, *supra*, at pp. 1077–1078.)

*International Fire Fighters* and *Sims* are inapposite.[7] We note that they concerned fire fighters being laid off from

---

[7] After the Department of Housing and SC Association of Governments argued in their responding briefs that *International Fire*
*(Fn. is continued on the next page.)*

29

their jobs and inmates' facing punishment by death. This case involves governmental entities' challenges to the administration of a program, something in which the entities have "'no vested, individual rights.'" (*City of Irvine, supra*, 175 Cal.App.4th at p. 519, quoting *Tri–County Special Educ. Local Plan Area v. County of Tuolumne, supra*, 123 Cal.App.4th at p. 578.) Furthermore, *International Fire Fighters* and *Sims* involved circumstances and statutes, the Meyers-Milias-Brown Act and the California Administrative Procedure Act, not at issue here. Plaintiffs do not establish that the Meyers-Milias-Brown Act and the California Administrative Procedure Act are analogous or comparable to the RHNA statutory scheme. Thus, *International Fire Fighters* and *Sims* fail to provide authority to support the assertion that the judicial review is available under the RHNA statutes. (*People v. Knoller* (2007) 41 Cal.4th 139, 154–155 ["'It is axiomatic that language in a judicial opinion is to be understood in accordance with the facts and issues before the court. An opinion is not authority for propositions not considered'"])[8]

Based on the foregoing, the trial court was correct that the RHNA statutes reflect a clear intent to preclude judicial intervention in the process under the facts presented, and

---

*Fighters* and *Sims* involved inapposite statutory schemes, plaintiffs failed to address the arguments in their reply brief.

[8]     We need not address the Legislature's ability to limit the court's jurisdiction under other circumstances and acts.

the trial court properly sustained the demurrers to plaintiffs' first amended petition.

## DISPOSITION

The judgment is affirmed. The Department of Housing and SC Association of Governments are to recover costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MORI, J.

We concur:

CURREY, P. J.

COLLINS, J.

31